### No. 11,022.

### JOHN A. O'NEIL VS. WALKER BROTHERS.

1. When a third opposition has for its object to set aside an order of sequestration on the ground that it has been effected on property claimed by a third party, such opposition is considered as a separate demand, distinct from the suit in which the order was granted, and opponent must be considered as plaintiff in an action of revendication. 12 An. 341.

2. A third opponent who does not attack either plaintiff's claim or the privilege which he asserts as securing it on property sequestered, but in his pleadings only raises a question as to the ownership of the property, is restricted to the single issue which he has tendered.

3. An agreement by which a person transfers movable property to another, but which leaves the vendor in possession, with the right for six months as the nominal agent of vendor to sell the property, repay the purchase price with interest and appropriate the surplus for himself, is simply a pledge without delivery under the name of a sale with power of redemption. Bourg vs. Lopez, 36 An. 440.

APPEAL from the Seventeenth District Court, Parish of St. Mary. *Allen, J.*

*Foster & Mentz* for Plaintiff and Appellee:

Any person advancing money, or furnishing supplies, to enable another to deaden, cut, haul, float or raft any logs or forest timber, shall have privilege upon such logs or timber. Acts 1882, No. 33, p. 47.

Privileges on movable property shall exist without registration. Constitution 1879, Art. 177.

Under the present Constitution registry to preserve a privilege is unnecessary in the absence of legislation requiring it. 35 An. 448, Kuhn & Co. vs. Embry & Pilcher.

A contract by which A sells to B a movable for a sum named, which sum, together with whatever may be realized from the movable, shall be placed to the credit of the seller, is not a contract of sale but of security. Title does not pass, the relation of the parties is not that of vendor and vendee, but of debtor and creditor. Herold vs. Stockwell, 32 An. 949.

When one transfers to another movable property, with the proviso that the latter is to sell it, pay himself what the transferrer owes him, and account to the transferrer for the balance, it is not a sale, and the transferee does not become owner. He is at most a bailee or a trustee. A seizure under *fi. fa.* of this property by a judgment creditor of the transferrer is lawful. 36 An., Bourg vs. Lopez.

An act, purporting on its face to be a sale *a remere*, is not translative of property when it is shown that the parties did not intend that it should so operate. Howe vs. Powell, 40 An. 307.

In a controversy over a sale of this kind, where the pretended vendee presents no issue save that of ownership, nothing but that issue will be passed on by the court. Ib.

The price is an essential in the contract of sale. C. C., Art. 2439.

A sale is perfect between the parties when there exists an agreement for the object and the price. C. C., Art. 2456.]

The price of the sale must be certain—that is to say, fixed and determined by the parties. C. C., Art. 2464.

As soon as the contract of sale is completed, the thing sold is at the risk of the buyer. C. C., Art. 2467.

Sales of movable property are void against a creditor unless possession is given before such creditor acquires his right. C. C., Art. 2247.

Although the consent to transfer movables transfers ownership, this effect is strictly confined to the parties until actual delivery. C. C., Art. 1922.

O'Neil vs. Walker Brothers.

If movables have been alienated but not delivered, they are liable, in the hands of the transferrer, to seizure by his creditors. C. C., Art. 1923.

The possession by a vendor of the movable under a precarious title, induces the presumption of simulation. C. C., Art. 2480.

Since the passage of Act 46 of 1880, amending Code of Practice 398, the seizing creditor may, in answer to a third opposition alleging ownership of personal property seized, "allege and prove the title fraudulent, and the court shall try and decide the issue thus made." Lahitte vs. Sheriff, 42 An. 864.

---

*D. Caffery & Son* for Intervenor and Appellant:

1. Privileges can not be extended by implication or analogy; they are never allowed but when expressly granted by law, and then only by virtue of an exact compliance with the legal request essential to their creation and existence. *Privilegia sunt strictissimæ interpretationis.* H. D. P. 1238, No. 3, 27 An. 87.

2. As against third persons they must be conclusively established.

3. Act 83 of 1882, providing "that any person advancing money or furnishing supplies to enable another to deaden, cut, haul, float or raft any logs or forest timber shall have a privilege upon such logs or timber," creates a privilege upon the logs or forest timber actually deadened, cut, etc., through the use of the money advanced or supplies furnished. The privilege does not extend to the general product of the swamping business of the person advanced, and is restricted to the particular trees the money or supplies enabled him to deaden, cut, etc.

4. The nature of a sale of movables can not be inquired into by a third party who, having set up a privilege on the movables sold, fails to clearly and satisfactorily establish it. He is without interest to dispute the sale.

---

The opinion of the court was delivered by

NICHOLLS, C. J. On the 17th of October, 1890, John A. O'Neil filed in the District Court a petition in which he alleged that the commercial firm of Walker Bros:, doing the business of cutting, hauling, buying and selling trees and timber, was indebted to him in the sum of $233.14, with interest thereon at the rate of 8 per cent. from the 23d of August, 1890.

That during the year 1889 plaintiff advanced and furnished supplies to the said defendants to enable them to cut, deaden, haul and float logs and ferret timber to the aforesaid sum, as shown by an account annexed for reference.

That under the law he was entitled to a privilege on the logs and timber for which these advances were made and entitled to be paid by preference out of the proceeds of the logs and ferret timber. That said logs and ferret timber, or the greater portion thereof, were still in the possession and under the control of the defendants.

That he had just ground to believe and did believe and aver that defendants would conceal, part with or dispose of the same, on which he has a privilege during the pendency of his suit, and that he was entitled to a writ of sequestration to preserve his rights in the premises.

He prayed for the issuance of such writ—that he have judgment for the amount claimed—that his privilege on the logs and timber be recognized, and that the same be seized and sold to satisfy his demand. The writ was ordered to issue and did issue as prayed for and under it a large number of logs were seized.

Lewis S. Clark intervened by way of third opposition in the suit. Reciting the fact of plaintiff's suit and the sequestration made therein of the logs as property of the defendants, he averred that they belonged not to Walker Bros. but to himself, and that they were at the time the sequestration was issued and levied in his actual and constructive possession, and that he was entitled to have the property restored to him on his executing his forthcoming bond; that he was entitled to have judgment for the damages occasioned him in prosecuting his claim, to-wit, $200 for attorney's fees and $10 traveling expenses. He prayed for citation to plaintiff and defendants, that the property sequestered be decreed to be his property, and that he be allowed to release the sequestration and have the property restored to him on his furnishing his forthcoming bond for such amount as the court might fix.

The court ordered the sequestration to be released and set aside, and the property sequestered to be restored to the intervenor on his furnishing bond in the sum of $10.300.

The bond having been furnished the logs were taken possession of by Clark.

The *defendants* in their answer pleaded the general issue, prayed that they be dismissed at plaintiff's costs, and that the sequestration be dissolved, with $75 damages for attorney's fees.

Plaintiff answered the intervention.

He first averred that intervenor's petition disclosed no cause of action, then pleaded a general denial, save what he should specially admit. He admitted the sequestration of the logs or trees, but specially denied that the same belonged to Clark or that he was in possession of the same. Further answering he alleged that the pretended sale of said sequestered property is fraudulent, collusive and

simulated, and made with a view of defrauding the creditors of defendants, and specially the plaintiff.

That defendants were insolvent at the date of said pretended transfer, and their insolvency was known to intervenor, and that he knowingly and fraudulently made himself a party to this transaction for the purpose of shielding the property of the defendants from the pursuit of their creditors.

That at the date of the sequestration defendants were in the possession of said seized property, and were then and now exercising all the rights of ownership over the same.

That if there was any transfer or sale of said timber there was at the date thereof no price paid for the same, and that the intervenor being a creditor of defendants the collusive transfer was made for the sole protection of intervenor, to the prejudice of the other creditors, specially plaintiff, and was made for the purpose of giving an unfair preference to intervenor.

That defendants had no other property out of which plaintiff could realize his claim. He therefore prayed that the demand of intervenor be dismissed, rejected and of no effect against plaintiff or of his rights, and in the event that the court deem that a transfer of said property was made, that the same be avoided, annulled and set aside, and the property seized be declared subject to the privilege and rights of plaintiff.

The case having gone to trial judgment was rendered thereon in favor of the plaintiff against the defendants, Walker Bros. for the sum of $233.14, with 8 per cent. per annum interest from the 23d day of August, 1890, maintaining the writ of sequestration, recognizing plaintiff's privilege on the logs and timber sequestered and ordering that the property sequestered be seized and sold to satisfy plaintiff's demand, principal, interest and costs.

The judgment further decreed that the petition and demand in intervention filed by Lewis S. Clark be rejected, and rejected at his costs.

The intervenor took a devolutive appeal from this judgment to the Court of Appeals, Fifth Circuit, returnable first Monday of May, 1891, but the appeal was dismissed on motion of plaintiff's counsel for want of jurisdiction, on the ground that the value and amount of the property in dispute was over $2000.

Intervenor then appealed to this court.

The defendants, Walker Bros., took no appeal and the judgment as to them became final.

The basis of intervenor's claim consists of two written agreements, which are as follows:

### Contract  Sale.

NEW ORLEANS, June 9, 1890.

*L. S. Clarke to Walker Bros.:*

2152 trees  not  rafted and  now  boomed  in  Bayous Felix and
    Cherami, which  trees  are  to  be  rafted, watched  and  cared
    for during  the next six months at our expense   .  .  .   $5,600
                 Received payment in full.

WALKER BROS.

### Agreement.

NEW ORLEANS, June 9, 1890.

Having this  day purchased  from Walker Bros. 2152 cypress trees now in Bayous Felix and Cherami and not rafted, same being timber floated and pulled by them during the last three months, and having paid them in full for said trees the sum of $5600, I hereby agree to sell back to said Walker Bros. the same lot of trees at any time within six months from date on their paying me cost price ($5600), and interest at 8 per cent. per annum.

Walker Bros. assume all responsibility for the care of said trees during the six months, and all expenses for rafting and watching or any other purpose all to be borne by Walker Bros., and in the event of the re-purchase of the timber by them under this agreement, they are to stand any losses of timber which may have occurred by sinking or otherwise, the intention of this agreement being that I shall receive back the full sum paid without any risk, responsibility or expense on my part.

(Signed)          LEWIS S. CLARK.

It should  be noticed that the third  opponent in his pleadings attacks  neither plaintiff's  claim nor  his  privilege, and that the only issue which  he tenders is the restricted issue of ownership *vel non* in himself of the property sequestered.   He occupies, therefore, the position of a plaintiff in an action of revendication.   12 An. 341. Claiming, as he does, under Walker Bros., whose continued ownership O'Neil insists upon, he must make  good  his position that their title has been divested and in his favor.

We have very carefully examined the evidence in the record, and are of the opinion that the dealings between the intervenor and defendants did not carry with them a transfer either of the property or possession of the logs seized. Although what is called "the contract of sale" refers to 2152 trees as having been purchased by Clark, the testimony shows that they were scattered about (not rafted) in or about Bayous Felix and Cherami, and formed part of a large number in the same situation in the same locality. At the time of the sale Clark had never seen the trees; he knew nothing of their size, condition, or identity, nor did he know precisely where they were.

It is not pretended that any one but himself dealt with the defendants and the contract left Walker Bros. free at any time to suit themselves, to select the particular trees which they might think proper to have fall under its operation; they were uncertain, indeterminate and not at the risk of Clark, either by law or by contract (C. C. 1915). The sale was not perfect (C. C. 2458). Clark might have held defendants to a delivery to him of 2152 trees, but not any specific trees. If intervenor had any claims they were of the floating character which we referred to in Hero vs. Block, 44 An. 1032, as being neither desirable nor permissible as affecting third parties. The precise objects with reference to which Clark and Walker Bros. were contracting not being fixed, ascertained and designated no possession of the same was or could be given to the former under such uncertain conditions, even if such a purely fictitions delivery as he relies upon in this case could have been available against creditors under the circumstances disclosed by the testimony.

What we have just said is upon the hypothesis that the intervenor and Walker Bros. occupied toward each other (with rights more or less fixed) the positions of vendors and vendee, but we do not think those were in law the relations between the parties.

Walker Bros., who were largely engaged in the business of deadening, cutting, floating, rafting and selling logs, being pressed by their employés for their pay, applied to Clark, to whom they as well as their father were heavily indebted, to advance them the money needed for that purpose. This he at first declined, but ultimately consented to do, matters between them taking the shape of the contract which is referred to as the " contract of sale."

Clark was not engaged in the lumber business, but a planter, and although a creditor of defendants and their father, does not appear to have been pressing them. He did not seek the defendants asking a sale, but they sought him asking a loan of money. He finally concluded, evidently, that by furnishing the money an opportunity would be afforded him not only to secure the same, but also to secure the indebtedness already mentioned as due him by defendants and their father through the contract which he eventually entered into.

Doubtless, as a whole, as between himself and the Walkers, his position was bettered; for he obtained through the contract the nominal title (binding Walker Bros., at least to a certain extent) to property which, the evidence satisfies us, was worth largely more intrinsically than the $5600 named as the price paid for it.

This property was never in fact delivered to the intervenor. It remained in the actual possession of the defendants, at their expense, and was to remain at their risk.

For six months at least defendants were authorized to sell the logs, and were beyond question, by understanding between them and Clark, authorized to appropriate to their own use as funds belonging to them any surplus of price which might remain in their hands after paying Clark in cash his advances and the debts due him with interest. Defendants never ceased to have an interest in this property.

The object of the contract was first to obtain an advance of money to pay the hands, next to secure the logs temporarily from seizure under cover and claim of adverse title, next to secure Clark, and finally to enure to Walker Bros.' benefit in enabling them to hold the property for six months, within which time a rise in the price of lumber was confidently expected, and within which time a sale was contemplated to be made, through which Clark was to be paid, and (Clark being paid) the defendants were to receive the remainder of the price.

We do not think it necessary to enter into details of testimony, but we feel satisfied that the so-called act of sale was not such, but a mere security.

See as bearing on this subject: Herold vs. Stockwell, 32 An. 949; Howe vs. Powell, 40 An. 308.

The intervenor, as we have said, has not disputed plaintiff's claim nor his privilege, and they have, besides, become fixed between

him and the defendants. He has not attempted to place himself before the court as either a privileged creditor or as holder of pledged property. In this respect he occupies the position which Hébert did in the case of Bourg vs. Lopez, 36 An. 440.

It is obvious, however, that the objections urged against the contract as one of sale would be equally applicable to it as one of pledge.

For the reasons herein assigned it is hereby ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby *affirmed*.

Judgment affirmed.