(101 South. 263)

No. 26301.

Succession of GOLL.

(July 8, 1924.)

*(Syllabus by Editorial Staff.)*

**1. Executors and administrators ⚖=221(6)— Succession; evidence held not to show that wife did not pay money to husband under marriage contract.**

On accounting by testamentary executor, evidence *held* not to show that widow had not paid to deceased $1,000 as provided in marriage contract.

**2. Husband and wife ☞255, 258—Deed to husband, not stipulating to contrary, vests title in community; improvements to separate estate with community funds renders separate estate debtor of community.**

·Without stipulations to contrary in deed to husband, a purchase of real estate by a married man during régime of marital community, with his separate funds, vests title in community, and puts community in debt to husband's separate estate for price paid, under Rev. Civ. Code, art. 2402, and same principle applies to improvements put upon separate estate at expense or with funds of marital community; separate estate becoming indebted to community at its dissolution for enhancement in value.

**3. Husband and wife ☞262(1)—Presumption that separate estate improved at expense of community slight, and readily yields to evidence to contrary.**

If there is presumption that separate estate was improved at expense of community, it is very slight, and should yield readily to evidence to contrary.

**4. Work and labor ☞7(2)—Services rendered in virtue of mandate or procuration deemed gratuitous.**

Under Civ. Code, art. 2991, in absence of agreement for compensation, services rendered in virtue of a mandate or procuration, excepting very troublesome or expensive services and perhaps professional services, and services rendered in particular business or trade, are gratuitous, particularly where rendered by son for father.

**5. Husband and wife ☞257, 273(2)—Status of rents collected before and after death of married man stated.**

Rents collected before death of married man belonged to community, and those collected afterwards belonged half to community and half to his separate estate, property from which rents were collected belonging half to separate estate and half to community, in view of Rev. Civ. Code, art. 2402.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

In the matter of the estate of Charles F. Goll, deceased. From a judgment amending final account of testamentary executor, he appeals. Judgment amended and affirmed.

E. M. Stafford and Daniel Wendling, both of New Orleans, for appellant.

Charles E. Dunbar, Jr., and Eugene D. Saunders, both of New Orleans, for appellee.

By Division A, composed of O'NIELL, C. J., and ROGERS and BRUNOT, JJ.

O'NIELL, C. J. This is an appeal from a judgment amending the final account of a testamentary executor. The opponent, in whose favor the account was amended, was Mrs. Amelia Kuebler Goll, widow of the deceased by second marriage. She died after her opposition to the account was tried, and her succession is now represented by the public administrator. The executor of the will of the deceased, Goll, is Charles F. Goll, Jr., a son of the deceased by his first marriage. The coheirs of the administrator are his brother, William B. Goll, and the children of his deceased sister, Julia Theresa Goll. There were no children of the second marriage of Charles F. Goll.

The executor, as appellant, complains of the judgment amending the account in the following particulars, viz:

(1) The widow was ordered placed on the account as a creditor of the separate estate of the deceased for $1,000, said to have been brought into the marriage and paid over to the husband under a marriage contract.

(2) The court recognized that certain city lots, inventoried as the property of the deceased, belonged half to his separate estate and half to the second community of acquêts and gains, and the court therefore adjudged the separate estate to be indebted to the community for $4,350, as the increase in value of the half interest of the separate estate for buildings constructed on the lots during the second marriage, and supposed to have been paid for with community funds.

(3) The court rejected certain commissions of 10 per cent. claimed by the executor on the rents collected by him as agent for his father, while the latter was in Germany, for several years.

(4) The court decreed that the rents col-

lected by the executor before his father's death belonged to the community of the second marriage, and that the rents collected after the death of Goll belonged half to the community and half to the separate estate of the deceased. The result was to give the widow half of the rents collected before her husband's death and a fourth of the rents collected after his death. The executor had listed all of the rents collected as belonging to his father's separate estate.

Taking up the complaints in their proper order, we shall consider first the judgment allowing the widow's claim of $1,000.

The claim is founded upon a marriage contract between the deceased, Goll, and Miss Kuebler, and upon a clause in Goll's will, recognizing the debt. The marriage contract was dated the 7th of February, 1880, five days before the marriage of Goll to Miss Kuebler. In the fourth article of the contract, it was declared:

"Art. 4. The said intended wife brings into marriage the sum of one thousand dollars, which she settles upon herself as her separate and paraphernal property, but which she shall put in the hands of her future husband as soon as the said marriage shall take place, and for which her said intended husband shall hold himself responsible and accountable to her."

In his will, the deceased, Goll, acknowledged the debt, thus:

"I made a marriage contract by which I acknowledged that my wife brought into marriage the sum of one thousand dollars, which she has against my estate.

"Now in case of my death, if my wife wishes to renounce her claim of one thousand dollars, in that case I give and bequeath to her the sum of thirty dollars per month during her natural life, and I leave all of my property, which is my separate estate, to my children, burdened with said sum of thirty dollars per month should she renounce her claim of one thousand dollars.

"Should she not renounce her claim of one thousand dollars, which said marriage contract shows my estate is subject to, then I leave all my property to my children."

[1] It is argued on behalf of appellant that, inasmuch as the marriage contract was merely an acknowledgment that Miss Kuebler *would* bring into the marriage $1,000, for which her husband *would be* responsible and accountable to her, it does not prove that she did pay the $1,000 to her husband. And it is argued that the declaration in the last will and testament of the deceased, Goll, regarding the $1,000, is nothing more than an acknowledgment that he had theretofore acknowledged in the marriage contract that Miss Kuebler would bring into the marriage $1,000, for which he would be responsible and accountable to her. It is argued, therefore, that the acknowledgment in the will adds nothing to the acknowledgment that was already made in the marriage contract. On that theory, the district judge allowed the executor, over the opponent's objection, to introduce testimony to prove that the deceased, Goll, had not received the $1,000. Pretermitting the question of admissibility of the testimony, our judgment of it is that it fell short of its purpose. The executor testified merely that, in a conversation with his father, after the latter had made his will, he said that his reason for bequeathing to his wife $30 a month in lieu of the $1,000 mentioned in the marriage contract was that, if she got the $1,000 at one time, she would spend it. It appears that the deceased did not either admit or deny that he had actually received the $1,000. It seems quite likely that he would have said that he had not received the money, if in fact he had not received it. And it is even more likely that he would have said in his will that he had not received the $1,000 for which he had made himself responsible by the marriage contract, if in fact he had not received it. The old man's failure to deny that his wife's claim of $1,000 was a just claim, in stipulating in his will that she would have to renounce the claim in order to get the stipend of $30 a month, leaves a very strong inference that

the wife's claim for the $1,000, for which the deceased had made himself responsible by the marriage contract, was and is a just claim. The widow, testifying in her own behalf, said—and there is no contradiction of her statement—that her mother paid the $1,000 to her husband for her. Our conclusion is that the judgment appealed from in that respect is correct.

We take up next the judgment declaring the separate estate of the deceased, Goll. to be indebted to the second community for $4.350, for the increase in value of the half interest of the separate estate in the lots which were improved during the second marriage. The judgment is founded upon the supposition or presumption that the improvements were paid for entirely with funds of the second community.

[2] It is not disputed now that the lots which were improved or built upon during the second community belonged half to the separate estate of the deceased and half to the second community. The lots were bought by the deceased during his first marriage and therefore belonged then to the first community. At the death of the first Mrs. Goll, the executor and his brother and sister inherited their mother's half interest in the lots; and they sold their half interest to their father after his second marriage. It is contended by the executor and his coheirs that the price was paid with the separate funds of their father, and that therefore the second community owes the separate estate the amount of the price so paid. That would be the legal consequence of their father's having bought the lots during his second marriage, in his own name and with his separate funds; for the deeds do not contain a recital that the price was paid with the separate funds of the husband or that the title was to vest in his separate estate. It is well settled that, without such stipulations to the contrary in the deed, a purchase of real estate by a married man during the regime of the marital community, in his own name and with his own separate funds, vests the title in the community and puts the community in debt to the husband's separate estate for the price paid. Rev. Civ. Code, art. 2402; Joffrion v. Bordelon, 14 La. Ann. 618; Durham v. Williams, 32 La. Ann. 162; Succession of Merrick, 35 La. Ann. 296; Moore v. Stancel, 36 La. Ann. 819; Heirs of Murphy v. Jurey, 39 La. Ann. 785, 2 South. 575; Hero v. Bloch, 44 La. Ann. 1032, 11 South. 821; O'Neil v. Walker, 45 La. Ann. 615, 12 South. 872; Hall v. Toussaint, 52 La. Ann. 1763, 28 South. 304; Succession of Muller, 106 La. 89, 30 South. 329; Succession of Burke, 107 La. 82, 31 South. 391; Sharp v. Zeller, 110 La. 61, 34 South. 129; McWilliams v. Stair, 128 La. 752, 55 South. 343; Succession of Andrus, 131 La. 940, 60 South. 623; Succession of Watkins, No. 25910, 101 South. 395, post, p. 1000.

The same principle applies to improvements put upon the separate estate of a married person at the expense or with the funds of the marital community. The improvements form a part of the separate estate, which becomes indebted to the community, at its dissolution, for the enhancement in value of the separate estate as a result of the improvements. Dillon v. Dillon, 35 La. Ann. 92.

[3] There may be, and perhaps is, a presumption, when the separate estate of a married person is built upon or improved during the marital community, that it was done at the expense of the community. But, the doctrine of the case just cited is that, if there be such presumption, it is very slight and should readily yield to evidence to the contrary.

In this case, the executor contends that the buildings that were put upon the lots during the second marriage of his father were paid for with the latter's separate funds. In support thereof, and in support of the contention that the second community's

half interest in the lots was paid for with the separate funds of the deceased, Goll, the executor proved that his father received during the second marriage at one time $2,250 in cash, and at another time $750 in cash and mortgage notes, for sales of property belonging to his separate estate. A comparison of the dates of the receipts with the dates of the buying and building upon the community property, taken in connection with the evidences of the old man's thrift and economy, leaves a strong inference that a considerable portion of these separate funds, amounting to $3,000, went to pay the price of the half of the lots bought during the second marriage, and to pay for the improvement of the lots. If the community's half interest in these lots was paid for with separate funds, the community owes the separate estate the price paid. If the buildings were paid for with separate funds, the community owes the separate estate half of the enhancement in value of the lots resulting from the improvements, at the time of Goll's death. On the other hand, if the community's half interest in the lots was paid for with community funds, there is no obligation on that score; but, if the buildings afterwards put upon the lots were paid for entirely with community funds, the separate estate owes the community half of the enhancement in value of the lots as a result of the improvements. If the community and the separate estate contributed equally in the improvement of the lots, there is no obligation one way or the other on that score. It is not possible to say, with any thought of accuracy, how much was expended by the separate estate and how much by the community, in the buying of the community's half interest in the lots, and in the subsequent improvement of them. The total price paid for the community's half interest in the lots appears to have been $1,450. The enhancement in the value of the lots by the buildings put upon them is, of course, only a matter of estimate. Our conclusion from the evidence is that the court's estimate of $4,350 for half of the enhancement in value is excessive. The total appraisement of the houses and lots at the time of Goll's death was only $7,000.

We cannot say or estimate with any idea of accuracy whether the community estate paid any more or less for the improvement of the lots than the separate estate paid for the community's half interest in them and for the improvement of them. Our conclusion, therefore, is that the judgment appealed from should be annulled in so far as it recognizes the separate estate of the deceased to be indebted to the community estate for an increase in value of the community's half interest in the lots, for the buildings put upon them during the second marriage.

[4] With regard to the 10 per cent. commission charged by the executor on the rents which he collected as agent for his father when the latter was in Germany, it is conceded that there was no agreement or understanding whatever that a commission would be charged for collecting the rents. According to article 2991 of the Civil Code, in the absence of an agreement for compensation, services rendered in virtue of a mandate or procuration—excepting very troublesome or expensive services, and excepting perhaps professional services and services rendered by one in the particular business or trade—are gratuitous. Leathers v. Cannon, 27 La. Ann. 522. The rule is particularly applicable to transactions between persons closely or intimately related. Latour v. Guillory, 134 La. 332, 64 South. 130. Our conclusion is that the judgment rejecting the commissions is correct.

[5] The judgment is correct also in so far as it declares that the rents collected before the death of Goll belong to the community of the second marriage, and that those collected afterwards belong half to the community and half to Goll's separate estate. The reason why the rents collected before Goll's

death belong to the marital community is that they were collected during the marriage. The fact that the property on which the rents were collected belonged half to the separate estate of Goll did not affect the status of the rents. All collections of rents or revenues from property under the administration of a married man, during the existence of the community of acquêts and gains, belong to the community. Rev. Civ. Code, art. 2402. The rents collected after the community was dissolved by the death of Goll belong to the owners of the property that produced the rents, in proportion to each owner's interest in the property.

The judgment appealed from is amended so as to reject the claim of $4,350 allowed as a credit due by the separate estate of the deceased, Charles F. Goll, to the community of his second marriage, for the buildings constructed during the second marriage. As thus amended, the judgment is affirmed. The costs of this appeal are to be borne by the community estate; all other court costs are to be borne by the separate estate of the deceased, Goll.