On Rehearing.
 

 O’NIELL, O. J.
 

 In the statement of this case, in the opinion rendered by Division B. (when this court was divided into divisions or sections), it was said that H. H. Waters was admitted into the firm as an equal partner with Kittredge, Grau and Bergen, after they had bought out Borelli with the partnership funds. That was a mistake. Waters was never a member of the commercial partnership, styled Borelli & Kittredge. It was when Borelli was “let out” of the partnership that the corporation was organized, and Waters came in as one of the four incorporators, paying cash to the corporation for his fourth of the capital stock. But that is not important in deciding whether the ownership of Kittredge’s fourth interest in the business was transferred from him to the marital community by effect of the converting of the partnership into a corporation.
 

 Kittredge owned his fourth interest in the partnership before he married Miss Augusta Grau. His interest in the partnership was therefore a part of his separate estate, not community property. The three other members of the firm were Borelli, Grau and Bergen, each having a fourth interest. Each partner had contributed a fourth of the original capital of $10,000 invested in the firm. It was a month after Kittredge had married Miss Grau that the firm of Borelli & Kittredge was reorganized. The fourth interest of Borelli was taken over by the remaining three partners for $2,500, paid with funds of the firm. At the same time Waters came in, and the concern was then incorporated under the style of Kittredge-Waters Supply Company, with an authorized capital of $20,000, and a stipulation in the charter that the corporation might commence business on a paid-in capital of $5,000.
 

 According to the agreement of the four incorporators, Kittredge, Grau, Bergen and Waters, each subscribed for $2,500 of . the capital- stock; and it was understood thereafter that each member owned a fourth of the capital stock of $10,000, although in fact no stock certificate was issued before the death of Kittredge and his wife. He' died 12 years after the corporation was organized. She died 3 years later.
 

 According to. the plan of organization, Waters was to pay $2,500 cash for his fourth of the capital stock, but it seems that he paid only $1,500 in cash and owed $1,000 on his subscription. Several years later-^perhaps because it was not convenient for Waters to pay the $1,000 balance due on his stock subscription- — the three other stockholders, Kittredge, Grau and Bergen, each withdrew $1,000 from the corporation, thus reducing the capital stock to $6,000, of which each shareholder had 15 shares, of the par value of $100 each. The reduction of the capital made no difference, of course, in the value of the total shares of stock held by each shareholder, because each owned always a fourth of the total outstanding capital stock. No stock was ever issued except to the four incorporators. At the time or immediately after the charter was signed the property and affairs of the partnership of
 
 *167
 
 Borelli & Kittredge were transferred to the Kittredge-Waters Supply Conrpany; the name was changed on the books of the concern and in the bank account; and the business was continued in the name of. the corporation as it had been carried on in the name of the partnership.
 

 Kittredge’s 15 shares of capital stock was worth more at the time of his death than his fourth interest in the partnership was worth at the time of the organization of the corporation.
 

 The plaintiffs in this suit are the heirs at law of the deceased, Kittredge. The defendants are the universal legatees of his deceased wife. The only question is whether the 15 shares of capital stock in the Kittr edge-Waters Supply Company, which Kittredge acquired for his fourth interest in the firm of Borelli & Kittredge, was a part of his separate estate or community property. It is not disputed that, as long as the partnership of Borelli & Kittredge lasted, Kittredge’s fourth interest in the firm continued to belong to his separate estate. Plaintiffs contend that the converting of the partnership into a corporation did not affect the title or ownership of Kittredge’s fourth interest in the concern; and that, even though he did exchange his interest in the partnership for a like interest in the corporation during his marriage, the transaction did not make the interest in the corporation community property, but merely substituted the fourth interest in the corporation for the fourth interest in the partnership, leaving the title or ownership of the fourth interest in the business where it was — in Kittredge’s separate estate.
 

 The defendants, on the other hand, contend that, inasmuch as Kittredge’s stock in the corporation was acquired during his marriage, it became community property, and at Kittredge’s death his widow inherited it, under Act 57 of 1910 (amended and re-enacted as Act 80 of 1916). On that theory the widow was given possession of 'the 15 shares of stock, by an order of court, soon after Kittredge’s death.
 

 The plaintiffs in this suit claimed that, even if the court should hold that the 15 shares of stock was community property, they should have judgment for the value of the fourth interest in the partnership, which went to pay for the 15 shares of stock. The district court rejected plaintiffs’ principal demand for the 15 shares of stock, but gave them judgment for $2,860.50 on their alternative demand for the value of Kittredge’s fourth interest in the partnership, which went to pay for the stock in the corporation. On appeal, this court (or division B), gave plaintiffs judgment for the 15 shares of stock.
 

 The theory on which the district court held that the stock was community property was that, when Kittredge (subscribed for the stock, he thereby became indebted to the corporation for the amount of his subscription, which debt was community debt, and that, when he transferred his fourth interest in the partnership to the corporation, in satisfaction of the debt, the capital stock which he got became community property, and the community became indebted to Kittredge’s separate estate for the value of his fourth interest in'the partnership, because it went to pay the comunity debt. This court rejected that theory, because, as a matter of fact, Kittredge’s subscribing for stock in the corporation did not obligate him unconditionally to pay for the stock. His subscribing for the stock was only a part of the whole transaction by which he surrendered his interest in the partnership for the shares, of stock in the corporation. It is true, according to the charter, each subscriber had the right to pay cash for his stock, but, by the terms of the plan of reorganization — by agreement among the incorporators — the cor
 
 *169
 
 poration was obliged to take over the business and affairs, tbe assets and liabilities, of tbe partnership, in payment for the stock subscription of Kittredge and his copartners. Their subscribing for the shares of stock did not make of them, in the ordinary sense, debtors to the corporation. It will not do, therefore, to say that Kittredge gave to the corporation his fourth interest in the partnership in payment of a community debt, and that the corporation gave to the community a fourth of the corporation’s capital stock in payment of a debt due to Kittredge.
 

 The theory on which this court reversed the judgment of the district court, and declared the plaintiffs to be the owners of the 15 shares of stock, was that the transaction by which Kittredge acquired the stock in return for his interest in the partnership was an act of exchange, and was governed by the decisions relating to exchanges of real estate. The court cited Newsom v. Adams, 3 La. 231; Lawson v. Ripley, 17 La. 238; Percy v. Percy, 9 La. Ann. 185; Troxler v. Colley, 33 La. Ann. 428; and Dillon v. Freville, 129 La. 1014, 57 So. 316.
 

 If the transaction by which Kittredge acquired the 15 shares of stock should be regarded as a sale, the stock would be community property, because it was acquired while Kittredge was married. Rev. Civ. Code, art. 2402. With regard to real estate, it is well settled that, when a married man, under the regime of the community, buys property with his separate funds, and takes the title in his name, unless the deed contains a statement to the effect that the purchase is made with his separate funds, the property will belong to the community, and the community, at its dissolution, will owe his separate estate for the price which he paid. It is not so with regard to a married woman. The law has zealously guarded her interest against that of her husband or his creditors. When she. buys property in her own name, it is not necessary to declare in the deed that it is bought with her separate funds. She may assert and prove the fact whenever it is.questioned. But, when a married man buys property in his name, without a stipulation in the deed that it is bought with his separate funds, the presumption in favor of the community is juris et de jure. Joffrion v. Bordelon, 14 La. Ann. 618; Durham v. Williams, 32 La. Ann. 162; Succession of Merrick, 35 La. Ann. 296; Moore v. Stancel, 36 La. Ann. 819; Heirs of Murphy v. Jurey, 39 La. Ann. 785, 2 So. 575; Hero v. Bloch, 44 La. Ann. 1032, 11 So. 821; O’Neil v. Walker, 45 La. Ann. 615, 12 So. 872; Hall v. Toussaint, 52 La. Ann. 1763, 28 So. 304; Succession of Muller, 106 La. 89, 30 So. 329; Succession of Burke, 107 La. 82, 31 So. 391; Sharp v. Zeller, 110 La. 61, 34 So. 129; McWilliams v. Stair, 128 La. 752, 55 So. 343; Succession of Andrus, 131 La. 940, 60 So. 623; Succession of Goll, 156 La. 910, 101 So. 263; Succession of Watkins, 156 La. 1000, 101 So. 395.
 

 Whether that rule applies only to purchases of real estate, or also to purchases of other property — specifically capital stock in a corporation — is a matter which we need not decide here, because the transaction by which Kittredge acquired' his stock was not a contract of sale, or at all similar to a sale.
 

 One reason — if not the only reason— why we granted a rehearing in this case was that some of us thought that some expressions in the opinion which was handed down ■were not consistent with our ruling in the Succession of Watkins, 156 La. 1000, 101 So. 395. In that ease a married man bought lands from a corporation and paid the price, not in cash, but with capital stock in the corporation; the stock being his separate property, which he had owned before he was married. There was no declaration in the deed that the lands were bought with the separate funds of the husband or as his separate
 
 *171
 
 estate. We ruled that the lands became community property, because, if the transaction was not, strictly speaking, a sale, it was similar to a sale; for article 2402 of the Civil Code, declaring that property bought during marriage in the name of either spouse becomes community property, does not restrict the rule to contracts of sale, but in terms applies to acquisitions '“by purchase or in any other similar way.” When a man buys property by a contract purporting to be an act of sale, his paying the price with a negotiable or transferable instrument instead of cash does not make the transaction an act of exchange any more than if he paid the price with a check on his bank account.
 

 It is true the five decisions cited in the original opinion handed* down in this case— and there are others to the same effect— maintain that article 2402 of the Civil Code does not apply to contracts of exchange of real estate. Property so acquired during marriage, in the name of either spouse, is substituted for the property given in exchange for it, and has the same status or ownership. If the property given was community property, so is the property received in exchange for it community property; and, if the property given belonged to the separate estate of the party in whose name it is given, so is the property received in the exchange his or her separate property.
 

 But the decisions cited ip support of that rule are hardly pertinent to this case. In Newsom v. Adams, 3 La. 231, for example, it was not the husband but the wife who acquired the property in exchange for her separate or paraphernal property. Of course, it was held that the property which she acquired became her separate property, not community property. In the second case cited (Lawson v. Ripley, 17 La. 252) the property (slaves) bought by the husband in his name, and adjudged to be his separate property, was bought in satisfaction of a claim that had been set apart in a marriage contract, or prenuptial contract, as his separate property, “set apart for the purchase of negroes.” The court said that its reason for so deciding was not merely that the transaction was an act of exchange, “but more particularly because the investment of the money proceeding from the claims in question had been provided for and agreed upon between the spouses in their marriage contract.” In the third case - cited (Percy v. Percy, 9 La. Ann. 185) a married woman acquired in her own name a slave in exchange for a slave which was her separate, paraphernal property, and, of • course, the court held that the slave which she acquired by the exchange became her separate, paraphernal property. The ruling would have been different perhaps if the court had been dealing with a married man instead of a married woman. In the fourth case cited (Troxler v. Colley, Sheriff, et al., 33 La. Ann. 425) several coheirs, one of them being a married man, bought a plantation from the succession, at a partition sale, and at a price less than the value of their interest in the succession, and thereafter they divided the land among them, each taking his part separately. The court held, of course, that article 2402 of the Oivil Code was not pertinent, and that the title which the married heir acquired for his part of the plantation belonged to him alone, not the community. In the fifth and last case cited (Dillon v. Previne, 129 La. 1006, 57 So. 316) the ruling was that, where a married man gave a lot of ground belonging to his separate estate in exchange for another lot of ground, the fact that he gave also $50 to equalize the values (the $50 being far below the value of either lot) did not make the transaction an act of sale or bring it under article 2402 of the Civil Code.
 

 The learned counsel for plaintiffs, appellants, contends that the ruling which we
 
 *173
 
 made in the Succession of Watkins, 156 L'a. 1000, 101 So. 395, was contrary to the rulings in Savenat v. Le Breton, 1 La. 520, and Hurst et al. v. W. B. Thompson & Co., 118 La. 57, 42 So. 645, and therefore ought to be overruled. There is no similarity between the two cases cited and the succession of Watkins, or between any of those three cases and the case before us. In Savenat v. Le Breton a married woman inherited a sum of money, which thereby became her separate, paraphernal fund, and she deposited it with her aunt for safe-keeping. Thereafter the aunt made a dation en paiement of a lot of ground to the depositor’s husband, acting as the agent for his wife, in part satisfaction of the debt. In the statement of the case, as published, it is said:
 

 “In the act, the husband acknowledged that he received the lot as part of the plaintiff’s paraphernal estate.”
 

 The court held, of course, that the lot which the married woman acquired in that way, in part satisfaction of her paraphernal claim, was her paraphernal property, not community property. The case -was governed, however, as the opinion shows, not by the Civil Code, but by the Spanish law relating to the rights of married persons with regard to property acquired during their marriage. In the other ease cited (Hurst et al. v. W. B. Thompson & Co.) the latter, having a judgment against Hurst, seized a lot of ground which his mother had donated to his wife and children. The wife and children intervened, claiming the property, and the court ruled:
 

 “A donation made especially and separately to the wife does not'fall into the community.”
 

 The provisions of article 2402 of the Civil Code do not apply to such a case.
 

 There is nothing in the decision in the Succession of Watkins that is not consistent with the decision heretofore handed down in this case. The difference between the two cases is that Watkins, during his marriage, bought the lands. Kittredge, during his marriage, did not buy the corporation stock, or acquire it in any similar way.
 

 We have concluded that the decree heretofore handed down in this case, declaring that the. 15 shares of stock belonged to the separate estate of Kittredge, is correct; but we do not rest our decision upon the idea that the transaction by which Kittredge acquired the stock was an act of exchange, or was governed by the rules applying to acts of exchange of real estate. There is good reason why article 2402 of the Civil Code, and the decisions relating to a married man’s buying real estate without stipulating in the deed that it is bought with his separate funds, do not apply to a married man’s acquiring real estate in exchange for -real estate belonging to him separately. In such case the title to the real estate which he has given in exchange for that which he has received is a matter of record, and the fact as to whether it belonged to his separate estate or to the community is more certain — i better fixed — than would be a declaration-in an act of sale that the land was bought with the purchaser’s separate' funds.
 

 But the transaction by which Kittredge acquired his stock in the KittredgeWaters Supply Company for his interest in the firm of Borelli
 
 &
 
 Kittredge was not an act of exchange. There was no mutual exchanging of one thing for another, corporeally or incorporeally, physically or metaphysically. The corporation did not receive an interest in the partnership, because the partnership went out of existence by the transaction. Neither did the corporation transfer to the incorporators anything which it had owned -previous to the transaction.
 

 We prefer, therefore, to rest our decision upon the common sense view that Kittredge acquired his capital stock, not by an actual
 
 *175
 
 transfer to him of something which he did not already own, but by the transformation of his interest in the partnership into an interest in the corporation. Every element that made up the value of Kittredge’s 15 shares of stock in the corporation had likewise fixed the value of his fourth interest in the partnership. There was no more similarity to a contract of exchange, in this conversion of a partnership into a corporation, in the conversion of Kittredge’s interest in the partnership into a like interest in the corporation, than there was in the miraculous change that took place in the water pots of stone at the marriage in Cana of Galilee.
 

 The decree heretofore handed down by this court is now reinstated and made final.
 

 LAND and THOMPSON, JJ., concur in the decree.