129 So.2d 849 (1961)
Maud Braud LAGLE et al.
v.
ESTATE of Octavie Braud MARCHAND et al.
No. 5183.
Court of Appeal of Louisiana, First Circuit.
April 10, 1961.
Rehearing Denied May 22, 1961.
Blum & Sotile, Donaldsonville, Jos. A. Loret, Baton Rouge, for appellants.
Talbot, LeSueur & Talbot, Napoleonville, for appellees.
Before ELLIS, LOTTINGER, JONES, HERGET and LANDRY, JJ.
*850 HERGET, Judge.
Numerous plaintiffs, alleged to be heirs of Miss Alexandrine Marchand and of her brother Jean Baptiste A. Marchand, brought suit against the estate of the deceased widow of Jean Baptiste A. Marchand, Mrs. Octavie Braud Marchand, her legatees, Wilmer J. Melancon and Mrs. Una Melancon Chauvin, and against Judge Clyde V. St. Amant and Miriam Attaya, attorneys, (1) for various sums of money and the value of sundry items of movable property of Miss Alexandrine Marchand which Mrs. Octavie Braud Marchand is alleged to have appropriated upon Miss Marchand's death; (2) and for moneys and properties which Jean Baptiste A. Marchand bequeathed only the usufruct of to Octavie Braud Marchand, his widow. In the original petition certain alleged plaintiffs were named who would not join in the suit. In a second supplemental petition these parties along with other alleged heirs of these estates, including the Society for the Propagation of the Faith, Archdiocese of New Orleans, were then named defendants and so cited. On page 152 of the transcript plaintiffs offered "extract from the minutes showing preliminary default against each of the defendants who had not filed answer; * * *." The only minutes of the Court reflecting the entry of preliminary defaults are on the dates of January 13, 1960 "against Wilmer Melancon and Una Meloncon Chauvin" who subsequently filed answers; and February 23, 1960 "against Society for the Propagation of the Faith, Archdiocese of New Orleans." These alleged heirs who were made defendants in the second supplemental petition and the Society for the Propagation of the Faith, Archdiocese of New Orleans were not named in the judgment dismissing plaintiffs' suit and, though Citations of Appeal were served upon them, in the absence of a judgment of the Trial Court, there is nothing on appeal before this Court as to said defendants.
Exceptions of no right and no cause of action were maintained dismissing the suit as to Judge St. Amant and judgment was signed thereon. After an exception of vagueness was maintained on behalf of Miss Attaya with reservation to plaintiffs to amend their original petition pursuant to the Court's ruling and a supplemental petition was filed in compliance with the Court's order, suit was dismissed as to Miss Attaya on the motion of counsel for plaintiffs by judgment of non-suit July 13, 1959. No appeals were taken from the judgments of dismissal of the suit against Judge St. Amant and Miss Attaya, so the matter is before us on appeal by plaintiffs from the judgment on the merits dismissing their suit as to the Succession of Octavie Braud Marchand, Wilmer Melancon and Mrs. Una Melancon Chauvin.
The evidence shows that Miss Alexandrine Marchand, Mrs. Philip Braud, her sister, and their brother Mr. Jean Baptiste A. Marchand and his wife Mrs. Octavie Braud Marchand, were living in the same home though in separate apartments at the time of Miss Marchand's death.
(1) Plaintiffs maintain that upon the death of Miss Alexandrine Marchand, Mrs. Octavie Braud Marchand took complete charge of the succession, listed only a part of the property of Miss Marchand, and took possession of an undetermined amount of unaccounted for cash. The evidence reveals Mr. Jean Baptiste A. Marchand had originally accompanied Mrs. Octavie Braud Marchand to the office of an attorney for the purpose of opening the succession of Miss Alexandrine Marchand but that he died prior to the date of the opening of the succession and the succession was opened at the instance of his widow, Mrs. Octavie Braud Marchand. The record in the succession of Miss Alexandrine Marchand discloses on April 14, 1954 a judgment was signed placing the heirs of decedent in possession, among whom were the plaintiffs in this suit. The testimony introduced on the trial of the instant case also reveals all of the heirs in that succession, including appellants, received their proportionate share in the succession and receipted therefor.
*851 In the present suit, filed on the 16th of December, 1954, plaintiffs contend Miss Alexandrine Marchand had, within the immediate seven years prior to her death, received some $12,000 from oil royalties and $2,000 from the sale of her interest in a certain plantation; that Miss Marchand spent less than an average of $50 a month, or a total of $4,550 during that period, therefore Miss Marchand must have had at least $9,450 in cash in her possession when she died, and in the Succession Mrs. Octavie Braud Marchand accounted for only $1,678 cash, consequently the Succession of Mrs. Octavie Braud Marchand owes the heirs of Miss Alexandrine Marchand at least $7,772.
On the trial of the case plaintiffs failed to produce any witnesses who saw any money in Miss Marchand's room before or after her death. The Trial Judge concluded, in which we concur, the plaintiffs had failed completely to show that Mrs. Octavie Braud Marchand converted to her own use any of the property belonging to Miss Alexandrine Marchand's estate. Though one of the contentions made by plaintiffs was that Miss Marchand "cached" her money in her room because of fear of depositing same in the bank, such contention was not proven and is inconsistent with the testimony of Mr. Irwin J. Mollere, Vice President of the First National Bank of Donaldsonville, that Miss Alexandrine Marchand opened a savings account in that bank in September, 1938 and up until December 31, 1953 there had been no withdrawals from said account and the total amount on deposit of $5,368.84 was then transferred to the estate of Alexandrine Marchand.
As heretofore stated, it is further shown by the evidence that each of the heirs of Miss Marchand, including the plaintiffs herein, accepted their proportionate share of the estate of Miss Marchand whose succession was opened on May 29, 1953 without mentioning or making the contention now made by plaintiffs that at the time Miss Marchand had the sum of $7,772 which had been allegedly appropriated by Mrs. Octavie Braud Marchand, though at that time and during the life of Mrs. Octavie Braud Marchand, who died on December 16, 1953, they had the same knowledge they had when they filed this suit of the alleged existence of such money. The Trial Judge dismissed the claim of plaintiffs in respect to these moneys for the reasons the evidence in regard to its existence was purely speculative, and furthermore no evidence was ever offered to show that Mrs. Octavie Braud Marchand, now deceased, had anything to do whatever with such funds. We are constrained to observe as did the Trial Judge that in this respect the plaintiffs have failed to sustain the burden of proof placed upon them.
(2) Jean Baptiste A. Marchand died in June, 1952 leaving a will in which he bequeathed to his wife, Mrs. Octavie Braud Marchand, the usufruct of all of his property. Plaintiffs contend the property left by him consisted of a small amount of corporeal movable property and a large amount of money and upon his death Mrs. Octavie Braud Marchand, as usufructuary, took possession of all of the property of his succession and remained in possession of it until her death.
In support of their claim, one of the plaintiffs, Mrs. Lagle, testified that her mother, Mrs. Marie Braud, who was a sister of Jean Baptiste A. Marchand, had received some $16,000 from royalties on property inherited by her from her sister, Mrs. W. J. O'Neill, and Jean Baptiste A. Marchand had likewise inherited from Mrs. O'Neill a similar interest; that he had received at least $14,000 from such oil royalties and about three months before he died the said Jean Baptiste Marchand had told her mother, Mrs. Braud, that he had $14,000 "in cash in the house and what he had in the bank." This witness, however, never saw any such money in the house of Jean Baptiste A. Marchand before or after his death. The Trial Court dismissed the contention of plaintiffs in respect to the presence of this alleged amount of cash in the home of *852 Jean Baptiste A. Marchand at his death as purely speculative and moreover concluded that if in truth this money had been received by Jean Baptiste A. Marchand as rentals paid in the form of royalty under a mineral lease on his separate property, such funds formed part of the community of acquets and gains existing between Jean Marchand and Mrs. Octavie Braud Marchand, and the said Jean Baptiste A. Marchand leaving no children, father or mother at his death, one-half of said funds belonged to Mrs. Jean Baptiste A. Marchand (Octavie Braud Marchand) of right and the other one-half was inherited by her under the provisions of LSA-Civil Code Article 915.
The latest expression of our Supreme Court on this question is found in the case of Milling v. Collector of Revenue, 220 La. 773, 57 So.2d 679, wherein the Court held that payments for oil royalties on the separate property of the husband formed part of the community, and at page 682 said:
"The fruits, both civil and natural, of the husband's separate property fall into the community during its existence. Succession of Goll, 156 La. 910, 101 So. 263; Peters v. Klein, 161 La. 664, 109 So. 349; Succession of Ratcliff, 212 La. 563, 33 So.2d 114, for the community `consists of the profits of all the effects of which the husband has the administration and enjoyment * *.' Art. 2402 R.C.C. This being true, we know of no compelling reason, nor has any been advanced, why the rentals paid in the form of royalty under a mineral lease on the separate property of the husband should form a part of his separate income, whereas the rentals paid in the form of shares of the crops growing on the same land would fall into the communitysince the one is a portion of the production of the minerals, and the other a portion of the crop production. The fact that the question here under consideration involves a tax on income cannot alter the legal nature of the revenue."
Our opinion is that the Trial Court correctly disposed of the contention of plaintiffs in regard to this alleged money.
Plaintiffs further contend that Jean Baptiste A. Marchand acquired as his separate property prior to his marriage certain tools he used in his carpentry work which they valued at the time of his death at $250. The proof offered by plaintiffs in regard to this item was very meager in that in support of said claim there was offered testimony of nephews of said decedent who admitted on cross-examination that certain items listed did not belong to Jean Baptiste A. Marchand and their testimony in regard to the date of acquisition of the tools was extremely vague. Furthermore, no proof was offered that Mrs. Octavie Braud Marchand received the tools or disposed of them and their location at the date of the trial was unknown. Such evidence is inconclusive, inadequate and insufficient to prove this alleged claim.
Another item forming part of plaintiffs' claim is for a Plymouth sedan automobile. In respect to this property it was shown that same was purchased during the marriage of Jean Baptiste A. Marchand and Mrs. Octavie Braud Marchand and is therefore presumed to be community property. Plaintiffs produced a check of Mrs. W. J. O'Neill, a sister of Jean Baptiste A. Marchand, payable to his order in the sum of $854.44 which was endorsed by J. B. A. Marchand to Thibaut Motor Company, Inc., from whom the vehicle was purchased. The production of this check is far from sufficient to overcome the presumption the car was community property. Mrs. Octavie Braud Marchand, the widow of Jean Baptiste A. Marchand, therefore became the owner of said vehicle at his death and had a perfect right to dispose of same.
The next item for consideration is the sum of $6,213.50 deposited in the First National Bank of Donaldsonville in 1944 in a joint savings account in the names of Jean Baptiste A. Marchand or Mrs. Octavie Marchand. There is a presumption *853 money so deposited formed part of the community of acquets and gains existing between Jean Baptiste A. Marchand and Mrs. Octavie Marchand. Under Jean Baptiste A. Marchand's will Mrs. Octavie Braud Marchand was bequeathed only the usufruct of his property and the usufruct of money is an imperfect or quasi-usufruct as provided in LSA-Civil Code, Article 534. Mrs. Octavie Braud Marchand was therefore entitled to use this money if it were his separate property, but, under LSA-Civil Code, Articles 536 and 549, though the usufructuary is granted the right to use and dispose of property of which she has an imperfect usufruct, the obligation is placed upon her of returning the same quantity, quality and value to the owner at the expiration of the usufruct. The burden of proof therefore rests upon plaintiffs to prove this money was the separate money of Jean Baptiste A. Marchand and overcome the presumption same formed part of the community property. In support of their claim one of the plaintiffs, Mrs. Lagle, testified that $3,400 of this money represented money Jean Baptiste A. Marchand received by inheritance in the succession of his sister, Mrs. O'Neill, and the other represented money from royalties on the interest in land the said Mrs. O'Neill bequeathed to him. From a reading of the record it is impossible to determine whether this testimony of Mrs. Lagle is based upon her conclusion or opinion rather than on a factual knowledge thereof. The only other evidence offered in connection with this deposit is the testimony of Mr. Irwin J. Mollere, Vice President of said bank, who related that on April 18, 1944 a savings account was opened at the bank in the name of Jean Baptiste A. Marchand or Mrs. Octavie Braud Marchand with an opening deposit of $3,400.75, and two other deposits on June 5, 1944 of $2,317.45 and $495.30 respectively. He further testified: "They drew out the interest here one time. That was on January 7th, 1948. They drew out $32.18. Last credit for interest, $32.49, was drawn on January 30th, 1950. That was interest credited; and $32.49 again; these three little withdrawals. * * * On November 19th, 1952, that savings account was closed and transferred into savings account in name of Mrs. Octavie Braud Marchand of $6,635.51." (Tr. 265.) In his testimony Mr. Mollere did not give the source of the deposits made to this account, so we find no positive proof that these funds were the separate property of Jean Baptiste A. Marchand, and certainly there is insufficient evidence to overcome the presumption the funds were community property, especially when it is noted the deposits were made to the savings account of Jean Baptiste A. Marchand or Mrs. Octavie Braud Marchand, signifying an affirmative act on the part of Jean Baptiste A. Marchand not to assert the claim the deposits were his separate funds. Furthermore, as heretofore noted, the source of these deposits were not proven and for the reasons heretofore given such portion of said deposits, if any, that represented oil royalties received by Jean Baptiste A. Marchand formed part of the community of acquets and gains.
The last item for consideration is the claim that Stock Certificate Number 4604 of the Union Federal and Loan Association amounting to the sum of $1,400 was inherited by Jean Baptiste A. Marchand from his sister, Mrs. W. J. O'Neill, and constituted his separate property. In respect to this claim Mrs. Lagle testified, pages 180 and 181 of the transcript, as follows:
"Q. Do you know anything about certificate 4604 of the Union Federal Savings & Loan Association? A. Yes. That was the, that was homestead association that my aunt, Mrs. O'Neill owned at the time of her death, and when she died, it was transferred to Jean Baptiste A. Marchand as his portion of the homestead association stock which she owned, which was divided by bequest. In other words, that was one of Mrs. O'Neill's original certificates. (Emphasis ours.)
*854 "Q. Mrs. O'Neill was a sister? A. To Jean Baptiste.
"Q. Jean Baptiste A. Marchand? A. And he came into it by a will of his sister. That would show on her succession.
"Q. Now this certificate was inherited by Jean Baptiste A. Marchand from Mrs. O'Neill, sister, bequeathed to him? A. That's right, in her will; in other words, it came as his portion.
"Q. Now what became of that certificate? A. Octavie Braud Marchand cashed that certificate September of 1953.
"Q. Did she ever account to any of her husband's heirs for the money that she got when she cashed it? A. No, she did not.
"Q. Has her succession ever accounted? A. Her succession has not accounted either.
"Q. How much was that certificate for? A. $1400.00."
Though Mrs. Lagle testified Certificate Number 4604 of the Union Federal Savings and Loan Association was for $1,400, plaintiffs in their original petition, paragraph 11, allege:
"That of the separate property which has been disposed of by the said Octavie Braud Marchand, which is known to your petitioners, are the following, to-wit:
* * * * * *
"(d) Fourteen shares of stock in the Citizens Saving and Loan Association, Certificate No. 3010, inherited from his sister Mrs. O'Neil, valued at the sum of $1,400.00.
"(e) One fully paid Income Share Certificate No. 4604, valued at the sum of $500.00."
Furthermore, as noted from Mrs. Lagle's testimony, she related the record in the Succession of Mrs. O'Neill would corroborate her testimony to the effect Certificate Number 4604 of Union Federal Savings and Loan Association amounting to $1,400 was the original certificate of stock belonging to Mrs. O'Neill and transferred to the names of Mr. or Mrs. Jean Baptiste A. Marchand. An examination of the succession, however, discloses that in this respect she was in error, as in the inventory in the Succession of Mrs. O'Neill there was no certificate numbered 4604 of the Union Federal Savings and Loan Association for $1,400. The inventory in said Succession shows the following:
"Stock in the Citizens Building and Loan Ass'n., Baton Rouge, La.:
Certificate No. 617, 5 shares of the par value of $100.00 each, dated March 8, 1937.
Certificate No. 622, 1 Share of the par value of $100.00, dated March 8, 1937.
Certificate No. 623, 1 Share of the par value of $100.00, dated March 8, 1937.
Certificate No. 624, 1 Share of the par value of $100.00, dated March 8, 1937.
Certificate No. 625, 1 Share of the par value of $100.00, dated March 8, 1937.
Certificate No. 626, 1 Share of the par value of $100.00, dated March 8, 1937.
Certificate No. 710, 5 Shares of the par value of $100.00 each, dated July 7, 1938.
Certificate No. 711, 20 shares of the par value of $100.00 each, dated July 7, 1938.
Certificate No. 765, 5 Shares of the par value of $100.00 each, dated January 6th. or 7th, 1939.
"Stock in the Union Federal Savings & Loan Association, Baton Rouge, La.:
Certificate No. 912, 5 shares of the par value of $100.00 each, dated Feb. 17, 1936.
Certificate No. 918, 1 Share of the par value of $100.00, dated March 2, 1936.
Certificate No. 931, 1 Share of the par value of $100.00, dated March 30, 1936.
Certificate No. 946, 1 Share of the par value of $100.00, dated May 11th, 1936.
Certificate No. 954, 1 Share of the par value of $100.00, dated June 8, 1936.
*855 Certificate No. 956, 1 Share of the par value of $100.00, dated June 22, 1936."
The Trial Judge found: "Certificate #4604 was issued to Mr. and Mrs. Marchand after their marriage and presumed to be community property." Certainly the plaintiffs have failed to prove by a preponderance of evidence that Certificate Number 4604 of the Union Federal Savings and Loan Association was the separate property of Jean Baptiste A. Marchand and that Mrs. Octavie Braud Marchand cashed same.
For these reasons, the judgment of the Trial Court is affirmed.
Judgment affirmed.