LAND, J.
Felicia D. Christ died in the year 1911, leaving a last will and testament by which she bequeathed and devised unto her husband, Joseph Christ, the undivided one-third of her estate and the usufruct of the remainder, without bond and security, and appointed him testamentary executor.
The will was probated, and an inventory of the estate was taken, showing what property belonged to the community, and that certain real estate and movables were claimed by Joseph Christ as his separate property. After the completion of the inventory, Joseph Christ ruled the heirs of the deceased wife to show cause why the inventory should not be approved and homologated. Five of the heirs appeared and opposed the homologation of the inventory, on the ground of the omission therefrom of certain notes, shares of stock, moneys, and movables belonging to the estate, and on the further ground that the real estate and movables figuring on the inventory as the separate property of Joseph Christ belonged to the community. The opposition was tried, and judgment was rendered, ordering that seven different items set forth in the opposition be included in the inventory, and rejecting the demand of the opponents as to the real estate and certain movables claimed by Joseph Christ as his separate property.
Opponents have appealed, and the appellee has not prayed for an amendment' of the judgment.
The real estate was acquired during the marriage by a duly recorded act of sale, but the appellee contends that the transaction was really an exchange of his separate property for other property.
The record facts are as follows: On August 8, 1884, Joseph Block conveyed, by act of sale, to Joseph Christ the E. % of section 31, township 7 S., range 1 E., containing 310.48 acres, for the price of $930, of which the sum of $480 was paid in cash, and the balance of $450 was represented by the note of the purchaser, due January 1, 1885, with 8 per cent, interest after maturity. ,
On the same day and before the same notary, Joseph Christ conveyed, by act of sale, to Joseph Block two certain tracts of land for the price of $930, of which the sum of $480 was paid in cash, and for the balance ($450) the purchaser assumed the payment of two notes of Joseph Christ to the order of C. F. Lemelle,' one for $200, due January 1, 1885, and the other for $250, due January 1, 1886, bearing 8 per cent, interest after maturity, and duly paraphed to identify *943 them with a notarial act of sale of date November 12, 1882. It is apparent that Joseph Christ could, not have received more than $480 in cash, or its equivalent, out of the sale to Joseph Block.
• It follows that Joseph Christ could not have invested more than $480 of his separate funds in the purchase from Joseph Block, and that the balance of the price, represented by his note for $450, was a debt of the community. There was no exchange of property, but two sales, in which the cash portion of the price due Joseph Christ was compensated by the cash portion of the price due Joseph Block. The case presented is that of a purchase by the husband, during the marriage, partly with his separate 'funds and partly with community funds.
The community consists of the estates which the husband and wife may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. Civil Code, art. 2402.
[1] Jurisprudence has construed this article so as to except purchases by the wife, in her own name, with her paraphernal funds, which were at the time administered by her separately and apart from her husband. Stauffer, Macready & Co. v. Morgan, 39 La. Ann. 633, 2 South. 98. And also to except purchases by the husband in his own name, with his separate funds, when he, 'in the act of purchase, makes the double declaration that the property is bought with the proceeds of the sale of property belonging to himself individually, and that the purchase is made for his individual account, for the purpose of replacing the individual property which he had sold. The use of only one of these two declarations is insufficient. Sharp et al. v. Zeller et al., 110 La. 61, 72, 34 South. 129, 133. In that case the court stated that the reason of the rule—
“is to bind' the husband irrevocably, so that he should be unable to subsequently abandon the property to the community, in order to exercise upon it, as a creditor, a right of priority for the replacement of the sum expended for its purchase.”
In a recent ease this court said:
“In the instant case there is nothing in the act 'by which the property was acquired to indicate that Rusch intended, in making the purchase, to reinvest his separate funds for his separate benefit, so that there can be no doubt that the title fell into the community, and that he became a creditor of the community for so much of his separate funds as he invested in it.” McWilliams v. Stair, 128 La. 756, 55 South. 343.
As the title of Joseph Christ does not on its face indicate any intention to reinvest his separate funds for his separate benefit, the purchase in question must be considered as having been made for the benefit of the community.
The parol evidence adduced in the court below to prove the intention of the husband to reinvest his separate funds for his individual benefit should have been excluded.
[2] The judgment of the court a qua recognized Joseph Christ as the owner of 30 head of cattle, 2 yoke of oxen, 1 horse, 1 mare, 1 colt, 2 wagons, farming tools, 1 bed, and 18 head of sheep. It is not claimed that the identical property above described was owned by Joseph Christ at the time of his marriage, but that he owned property of like number and kind, which was converted to the use of the community. The right of the surviving husband to take from the cattle remaining at the dissolution of the marriage a number of head equal to that brought by him in marriage was affirmed in the case of Succession of Waterer, 25 La. Ann. 210. A similar right was granted to *945 the wife in Wimbish v. Gray, 10 Rob. 46. In Long v. Kee, 42 La. Ann. 899, 8 South. 610, where the defendant, employed by the plaintiff as superintendent and manager of a plantation, was to receive, in lieu of salary, the profit arising from the cultivation of the yearly crops, and to have one-half interest in the increase of live stock, it was held that the proprietor was entitled to have set apart and returned to him, at the termination of the agreement, a number of cattle, etc., equal to that he invested originally, citing Wimbish v. Gray, 10 Rob. 46; Succession of Waterer, 25 La. Ann. 211; R. C. C. art. 593. That article provides that if the whole herd of cattle does not die the usufructuary is bound to make good the number of dead out of the new-born cattle, as far as they go.
[3] The profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, fall into the community. O. O. art. 2402. Hence the community quoad such effects, whether owned by the husband or the wife, occupies a position similar to that of an usufructuary. This is the jurisprudence of this court, and the rule of stare decisis forbids the reopening of the same question.
It is obvious, however, that the rule supra has no application to wagons, tools, and furniture.
It is therefore ordered that the judgment appealed from be so reversed and amended as to decree that the real estate and movables, except live stock, as described in said judgment, belong to the community formerly existing between Joseph Christ and his deceased wife, Felicia D. Andrus, and that said property he duly inventoried as such in her succession, without prejudice, however, to any claims that the said Joseph Christ may have against said community. It is further ordered that said judgment as thus reversed in part and amended be affirm'ed; and that the appellee pay costs of appeal.