## COMMISSIONER OF INTERNAL REVENUE v. GRAY.

### No. 11644.

Circuit Court of Appeals, Fifth Circuit.

Feb. 14, 1947.
Rehearing Denied March 31, 1947.

Hilbert P. Zarky, Sewall Key, and Helen R. Carloss, Sp. Assts. to the Atty. Gen., Douglas W. McGregor, Asst. Atty. Gen., J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Claude R. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

Albert B. Koorie, of New Orleans, La., for respondent.

Before McCORD, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

This suit involves a deficiency in income tax for the year 1941. The questions presented are: (1) whether royalties and bonuses paid under oil and gas leases to the husband as owner of separate real property in Louisiana belonged to the community or to him separately;[1] and (2) whether, if such royalties and bonuses belonged to the community, they were taxable as separate income to the husband because derived from his separately owned property.

The facts were stipulated, and those pertinent may be summarized as follows: Prior to 1939 the taxpayer acquired by inheritance a one-third interest in certain lands in Louisiana. The taxpayer and his

[1] The solution of such question depends upon the local law. Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239; Commissioner v. Wilson, 5 Cir., 76 F. 2d 766.

sister, owner of the other two-thirds interest, operate the lands as a plantation. Subsequent to acquisition of the lands but prior to 1939, oil was discovered and profitable production followed. The taxpayer and his wife, domiciliaries of Louisiana, were married prior to the taxable year. No prenuptial agreement concerning their separate or community income exists. During the taxable year the taxpayer received oil lease bonuses and royalties and the restored depletion from cancelled leases. The taxpayer and his wife, in reporting these items, divided them equally in their tax returns. The Commissioner, determining that these items constituted separate income of the taxpayer, assessed a deficiency in his income tax and reported an over-return in that of his wife.

The Tax Court held that these items constitute community income of the taxpayer and his wife, and reversed the Commissioner. 5 T. C. 290. In reaching its conclusion, the Tax Court relied on several decisions of the Supreme Court of Louisiana, viz.: Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264; Logan v. State Gravel Co., 158 La. 105, 103 So. 526; Board of Commissioners of Caddo Levee District v. Pure Oil Co., 167 La. 801, 120 So. 373; Shell Petroleum Corp. v. Calcasieu Real Estate & Oil Co., 185 La. 751, 170 So. 785, in which the court stated that the payment of royalties under a mineral lease was the payment of rent; and the case of Gulf Refining Co. of Louisiana v. Glassell, 186 La. 190, 171 So. 846, 848, in which the court said that "the usual oil and gas lease, with a cash or royalty consideration, or both, such as presently before us, is a contract of letting and hiring within the meaning of the codal articles, and therefore does not create a servitude on the realty or a real right in the land."

After reasoning that the payment of royalty is a payment of rent, the Tax Court applied the Louisiana law in Peters v. Klein, 161 La. 664, 109 So. 349, 350, that "all collections of rents or revenues from property under the administration of a married man, during the existence of the community belong, to the community." The Tax Court then held that bonuses, royalties, and restored depletions on bonuses collected by the taxpayer, under oil and gas leases covering his separate real property, went into the marital community. The Commissioner is here urging that the Tax Court failed to appraise properly the jurisprudence it cited.

Louisiana cases hold that royalty is rent for certain, but not all, purposes. Early in the jurisprudence of Louisiana having to do with mineral contracts, the Supreme Court recognized that oil and gas leases contained elements of both ordinary leases and sales. In Rives v. Gulf Refining Co., 133 La. 178, 62 So. 623, 624, the court said: "Gas and oil leases and contracts are a part by themselves. There is scarcely any comparison between them and the ordinary farm or house lease, although there is some resemblance in them to coal or solid mineral leases. The Code is silent as to such contracts; for the reason, doubtless, that minerals under and within the soil of Louisiana were not in the contemplation of the lawmakers at the time that the Code was adopted. * * * The law with reference to sales and leases found in the Code cannot be unreservedly applied to these contracts. Such contracts partake of the nature of both sale and lease, and they have features which are not applicable to either."

In Spence v. Lucas, 138 La. 763, 70 So. 796, 798, the court said: "* * * mineral leases will be construed as leases, and not sales, and that the law with reference to leases will be applied thereto *in so far as they may be*." [Emphasis added.]

Again in Nabors Oil & Gas Co. v. Louisiana Oil Refining Co., 151 La. 361, 91 So. 765, 766, the court (headnote 10) held: "The doctrine that an ordinary lessee cannot dispute the title of his lessor during the time of the lease has no application to a contract in the form of an oil and gas lease by which a person acquires mineral rights, it being more like a sale than an ordinary lease * * *."

This concept of an oil and gas lease, partaking of the nature of both sale and lease, runs through the jurisprudence of Louisiana, Sparks v. Dan Cohen Co., 187 La. 830, 175 So. 590; Wiley v. Davis, 164

La. 1090, 115 So. 280; Tyson v. Surf Oil Co., 195 La. 248, 196 So. 336; Gulf Refining Co. of La. v. Garrett, 209 La. 674, 25 So.2d 329; and the law applied to a given case has depended on whether the articles of the Code dealing with letting and hiring were applicable to the issue before the court, or whether the partial alienation or dismemberment of the fee, the sale feature of the lease contract, was a factor to be considered by the court in passing upon the question before it. Most of the apparent conflicts in the cases can be reconciled if this differentiation be observed.

In Roberson v. Pioneer Gas Co., Logan v. State Gravel Co., Board of Commissioners of Caddo Levee District v. Pure Oil Co., and Shell Petroleum Corp. v. Calcasieu Real Estate & Oil Co., cited by the Tax Court, the articles of the Code dealing with letting and hiring were applicable to the issues before the court. Nabors Oil & Gas Co. v. Louisiana Oil Refining Co., supra; Wiley v. Davis, supra; Federal Land Bank v. Mulhern, 180 La. 627, 157 So. 370, 95 A.L.R. 948; Wright et al. v. Imperial Oil & Gas Products Co., 177 La. 482, 148 So. 685; Texas Co. v. Fontenot, 200 La. 753, 8 So.2d 689, exemplify the application of the sale feature of lease contracts. To illustrate:

In Wiley v. Davis, supra, an oil and gas lease given by the natural tutrix on the property of her wards was held null and void. The reason given by the court was that an oil and gas lease was a partial sale. The court said [164 La. 1090, 115 So. 281]:

"But as tutrix of her children Mrs. Davis had no authority to grant a mineral lease on their behalf without authorization of the probate judge; for the granting of a mineral lease on property is the granting of a servitude thereon * * * and hence constitutes a *dismemberment* of said property amounting to a partial *alienation* thereof. * * * And since the tutrix had no authority to grant said lease on behalf of the minors, the lease was null as to said minors."

In Federal Land Bank v. Mulhern, supra, the court sustained the right of a mortgagee to protect his mortgage against an oil and gas lessee under a lease subsequent in date to the mortgage. The court said [180 La. 621, 157 So. 373]:

"* * * While the owner of land does not own the fugitive minerals, such as oil and gas, beneath its surface, but only the right to reduce them to possession and ownership, and while such minerals are not susceptible to ownership apart from the land, * * * yet these minerals, while in place in the ground beneath the surface, unsevered, are real estate, a part of the land itself, a part of the realty, as much so as timber, coal, iron, and salt * * *.

"A lease granted by the owner of land for the development of the property for oil and gas *is, in a sense, a conveyance of the mineral rights, an alienation of a part of his interest in the land, a dismemberment of the realty. * * ** [Emphasis added.]

"The gas in place in the ground being a part or element of the realty, it follows that it constitutes a part of the value of the land, * * *."

In Wright et al. v. Imperial Oil & Gas Products Co., supra, a case involving liability of the owners of the gas severed for severance tax, the court held that while the natural gas beneath the surface was the property of no one until reduced to possession, the lessor at the moment the gas was reduced to possession in the course of its extraction from the land became the owner of a part of it, namely, ⅛, and at the same instant the lessee became the owner of the remainder. Referring to the cases of Logan v. State Gravel Co., supra; Board of Commissioners of Caddo Levee District v. Pure Oil Co., supra; and Roberson v. Pioneer Gas Co., supra, cited by plaintiffs to show that they were never at any time the owners of any part of the gas produced since their contract was one of lease and the royalties paid were rent, the court said [177 La. 474, 148 So. 686]: "* * * The issues presented in those cases, as well as the facts, are different from those in the present case. There was no question presented there, involving liability for a severance tax. While in them, especially in the latter two, the court treated royalties as rent, it does not fol-

low that when the question of who is liable for severance tax arises, the court will not examine particularly into the facts, involving liability for the tax, and rule that the owner of the royalty [part of the natural resource severed] is liable for the tax thereon. Although the lessor, at the moment of the reducing of the oil or gas to possession, may be the owner of a part of it, nevertheless the delivery of such part by the lessee to the lessor as royalty may be treated, *in proper cases,* as the payment of rent." [Emphasis added.]

■ The Civil Code of Louisiana in articles 2334 and 2402 defines separate and community property.[2] Article 2402 says that the community includes, among other things, the profits of all of the effects of which the husband has the administration and enjoyment of right or in fact. The word "profits," an erroneous translation from the French text, should be read "fruits" (see 3 Compiled Edition of the Civil Codes of Louisiana, Louisiana Legal Archives, Part II, pp. 1318–1320). With the exception of the last sentence in article 2402, dealing with damages resulting from personal injury to the wife, the present article is identical with the corresponding article of the Code of 1870 and of the Code of 1825. In Louisiana, where the French text of the Code conflicts with the English text, the French text prevails. Sample v. Whitaker, 172 La. 722, 135 So. 38, 40; Phelps v. Reinach, 38 La.Ann. 547.

■ The rights of the community in the income from the separately owned properties of the spouses under the administration of the husband are the same as the rights of the usufructuary to income. The community is entitled to the fruits to which the usufructuary is entitled. In Succession of Andrus, 131 La. 940, 60 So. 623, 625, the court said: "The profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, fall into the community. C.C. art. 2402. Hence the community quoad such effects, whether owned by the husband or the wife, occupies a position similar to that of an usufructuary. This is the jurisprudence of this court, and the rule of stare decisis forbids the reopening of the same question." See to the same effect Wimbish

---

[2] Article 2334:

"Separate and common property of spouses.—The property of married persons is divided into separate and common property.

"Separate property is that which either party brings into the marriage, or acquires during the marriage with separate funds, or by inheritance, or by donation made to him or her particularly.

"The earnings of the wife when living separate and apart from her husband although not separated by judgment of court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, actions for damages resulting from offenses and quasi offenses and the property purchased with all funds thus derived, are her separate property.

"Actions for damages resulting from offenses and quasi offenses suffered by the husband, living separate and apart from his wife, by reason of fault on her part, sufficient for separation or divorce shall be his separate property.

"Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared. But when the title to community property stands in the name of the wife, it can not be mortgaged or sold by the husband without her written authority or consent. [As amended, Acts 1912, No. 170; 1920, No. 186.]"

Article 2402:

"Property forming community—Personal injuries to wife.—This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. But damages resulting from personal injuries to the wife shall not form part of this community, but shall always be and remain the separate property of the wife and recoverable by herself alone; 'provided where the injuries sustained by the wife result in her death, the right to recover damages shall be as now provided for by existing laws.' [As amended, Acts 1902, No. 68.]"

v. Gray, 10 Rob. 46; Succession of Waterer, 25 La.Ann. 210; and Long v. Kee, 42 La.Ann. 899, 8 So. 610. Therefore, we turn to the articles of the Code setting forth the "fruits" to which the usufructuary is entitled to determine the "fruits" (erroneously translated as "profits" in article 2402) to which the community is entitled. These articles are set forth in a footnote.[3]

█ "Fruits" are products reproduced from time to time in successive seasons and include fruits of the earth, civil fruits, and the young of animals. Elder v. Ellerbe, 135 La. 990, 66 So. 337; Jackson v. Shaw, 151 La. 795, 92 So. 339. "Fruits" do not include minerals and timber. C.C. art. 551. Elder v. Ellerbe, supra; Harang v. Bowie Lumber Co., 145 La. 96, 81 So. 769.

As defined in article 533 of the Civil Code, a usufruct is the right of enjoying a thing, the property of which is vested in another, and to draw from the same all of the profits, utility, and advantages which it may produce, *provided it be without altering the substance of the thing.* The kind of fruits spoken of in article 545 of the Civil Code of which the usufructuary has the enjoyment are such as may be used without altering the substance of the thing. Since oil in place is part of the realty, "when * * * the lessee goes on the property and drills for and abstracts gas [oil] for the purpose of reducing it to possession and ownership, the real estate which holds or contains the gas [oil] is wasted by its extraction, because the property is actually deprived of something which forms a component part of it that is valuable and capable of being reduced to possession and ownership." Federal Land Bank v. Mulhern, supra, [180 La. 627, 157 So. 376] on rehearing. Oil in the earth is not a "fruit" but a part of the realty itself; its removal, therefore, alters the substance of the thing of which it is a part.

In a recent case, Gulf Refining Co. v. Garrett, 209 La. 674, 25 So.2d 329, 333, the Louisiana Supreme Court on original hearing made an analysis of the status of a royalty under the codal provisions. In answer to the argument that royalty was rent and that rent was a civil fruit of which the usufructuary had the enjoyment, the court said:

"One of the arguments urged in support of Mrs. Garrett's claim, that she is entitled to all of the royalties from oil produced from the well drilled on the 80-acre tract after the agreement dated June 17, 1941, was entered into, is that the royalty on oil or gas, in a mineral lease, is rent, and that rent is revenue. The argument refers to the third paragraph in article 545 of the

---

[3] "533. Usufruct defined.—Usufruct is the right of enjoying a thing, the property of which is vested in another, and to draw from the same all the profit, utility and advantages which it may produce, provided it be without altering the substance of the thing.

"The obligation of not altering the substance of the thing takes place only in the case of perfect usufruct. * * *

"544. Fruits—Ownership.—All kinds of fruits, natural, cultivated or civil, produced, during the existence of the usufruct, by the things subject to it, belong to the usufructuary.

"545. Kinds of fruits defined.—Natural fruits are such as are the spontaneous product of the earth; the product and increase of cattle are likewise natural fruits.

"The fruits, which result from industry bestowed on a piece of ground, are those which are obtained by cultivation.

"Civil fruits are rents of real property, the interest of money, and annuities.

"All other kinds of revenue or income derived from property by the operation of the law or private agreement, are civil fruits.

"546. Natural or cultivated fruits—Ownership.—The natural fruits, or such as are the product of industry, hanging by branches or by roots at the time when the usufruct is open, belong to the usufructuary.

"Fruits in the same state, at the moment when the usufruct is at an end, belong to the owner, without being obliged to compensate the other, for either work or seeds. * * *

"547. Civil Fruits—Ownership.—Rents and income of property, interest of money, and annuities, and other civil fruits, are supposed to be obtained day by day, and they belong to the usufructuary, in proportion to the duration of his usufruct, and are due to him, though they may not be collected at the expiration of his usufruct."

Civil Code, where it is declared: 'Civil fruits are rents of real property, the interest on money, and annuities.' But the word 'rents' as used in that paragraph means the rent of a farm or house,—not the royalty stipulated in a mining lease; otherwise the paragraph would conflict with article 552 of the Civil Code, referring to the right of a usufructuary with regard to the 'proceeds of mines and quarries.' And it would conflict with the proviso in article 533, defining 'usufruct', and limiting the right of the usufructuary to 'all the profit' of the property subject to the usufruct, *'provided it be without altering the substance of the thing.'* [Italics ours.] The cases cited to support the argument for Mrs. Garrett in that respect are Logan v. State Gravel Co., 158 La. 105, 103 So. 526, and Board of Commissioners of Caddo Levee District v. Pure Oil Co., 167 La. 801, 120 So. 373, and several other decisions, maintaining that the royalty stipulated in a mining lease is considered rent. *Notwithstanding the royalty stipulated in an oil or gas lease may be considered as rent for certain purposes, or in some aspects, it is well settled now that the royalty stipulated in an oil or gas lease is not to be compared with rent of a house or a farm.* [Emphasis added.] It is true that in the case of Gulf Refining Co. v. Glassell, 186 La. 190, 171 So. 846, 850, it was declared that a mineral lease, for the production of oil or gas, and a lease of a farm, should be placed in the same legal category, that is, as leases, conferring 'personal rights and not real rights.' But the holding in that case was abrogated by the Legislature at its next session, by Act 205 of 1938, declaring that oil and gas leases and the rights resulting therefrom 'are hereby defined and classified as real rights and incorporeal immovable property.' In the case of Amerada Petroleum Corporation v. Reese, 195 La. 359, 368, 196 So. 558, the court quoted with approval from Allison v. Maroun, 193 La. 286, loc.cit. 291, 190 So. 408, loc.cit. 409, the following observation: 'It is a matter of general knowledge, and is conceded by all parties to this suit, that the cause which induced the Legislature to enact Act No. 205 of 1938 was the decision in Gulf Refining Co. v. Glassell, 186 La. 190, 171 So. 846, that the holder of a mineral lease had not a real right on the leased land and therefore could not institute successfully a petitory or possessory action. That the statute was enacted in consequence of that decision is emphasized by the provision of the second section, that the act shall apply as well to leases made previous to the passage of the act as to leases made afterwards.' "

The justices of the court disagreed as to the interpretation of the agreement involved in the Gulf Refining Company case; on application, a rehearing was granted; and, on rehearing, a majority remanded the case for testimony on the intention of the parties who executed the agreement. While the original opinion is not authority, as it was set aside by the granting of a rehearing, the logic of the analysis of the authorities as to the status of a royalty *under a right of usufruct* and the conclusion therefrom, set forth in the quotation, are persuasive. Neither the analysis nor the conclusion was challenged in the dissenting opinions or in the opinion on rehearing.

Under Louisiana law royalty under a mineral lease is a share of the product reserved by the owner for permitting another to use his property Wright, et al., v. Imperial Oil & Gas Co., supra; Texas Co. v. Fontenot, supra; Vincent v. Bullock, 192 La. 1, 187 So. 35; Sartor v. United Gas Public Service Co., 186 La. 555, 173 So. 103; State v. Texas Co., 187 La. 287, 174 So. 359. When, therefore, the lessee delivers to the lessor royalty stipulated and reserved to the lessor in the lease, he is delivering to the lessor a share of the product, the right to which product was vested in the lessor by virtue of his ownership of the property.

"The settled jurisprudence, therefore, is that, under an oil and gas lease contract in which the lessor reserves a stipulated royalty interest, the parties own the oil or gas jointly at the time of severance, the lessor owning the fractional interest reserved as royalty and the lessee owning the remainder * * *." Texas Co. v. Fontenot, 200 La. 753, 8 So.2d 689, 692.

While for some purposes this product may be termed rent, so terming it does not change the fact that in receiving it the les-

sor has merely received that which he has reserved.

As the owner of the property the taxpayer had the exclusive right to drill for and abstract the oil and thereby acquire full legal title to the oil. This right he conveyed to another by means of a lease, one consideration being the lessee's obligation to deliver to him a fractional part, the royalty reserved, of the oil produced. The fact that it was delivered to him in the form in which he acquired the legal title at the time of severance and that this was done by the lessee may not convert what is separate property into community property.[4] In this respect an oil royalty is not similar to rent received from real estate.

 Fruits from the husband's separate estate falling into the community under article 2402 of the Civil Code have the same character as the fruits of the wife's paraphernal property falling into the community under article 2386 of the Civil Code. Prior to 1944 article 2386 described the fruits so falling as "natural, civil, or the result of labor." In 1944 the Legislature, in amending the article, amended the description with respect to the fruits to read "natural, civil including interest, dividends and rents, or from the result of labor." The amendment thus specified "interest, dividends and rents" as included in "civil" fruits. Since the oil industry in 1944 was one of the largest in the State, the omission of "royalty" from the specific designation of "interest, dividends and rents" indicates the Legislature did not consider royalty a civil fruit. The husband may enjoy interest and dividends without consuming the producing property. By the rule of ejusdem generis, the "rents" in the phrase "interest, dividends and rents" must refer to non-consuming rents, such as money rentals payable for non-oil-bearing properties. The facts in Peters v. Klein, supra, cited by the Tax Court, show that the rents collected in that case were of that character.[5]

We conclude therefore, that the rent of land denominated a "civil fruit" in C.C.

art. 545, of which the usufructuary has the enjoyment and which belongs to the community when the land is under the administration of the husband, is rent under an ordinary lease.

Gulf Refining Co. v. Glassell, supra, also relied on by the Tax Court must be read in the light of the issue before the court. With reference to the scope of that decision the Supreme Court in Smith v. Kennon, 188 La. 101, 175 So. 763, 766, said: "* * * the same justice who wrote the opinion [in a per curiam in connection with the refusal of an application for rehearing] stated: 'We simply held that a lessee of the usual mineral or gas and oil lease has no real right in or servitude on the leased land and is not a judgment creditor type obligee and therefore cannot, in his own right or name, institute a petitory or possessory action.'"

In Amerada Petroleum Co. v. Reese, 195 La. 359, 196 So. 558, 561, in referring to the Glassell case and Act 205 of 1938, passed by the Legislature shortly after the Glassell case was decided, the court said: "And as stated in the Louisiana Law Review, 'Act 205 of 1938 was passed for the purpose of changing the rule of the Glassell case. * * * By defining a mineral lease as a "real right," the 1938 Act brings the right of the lessee (such as that in the Glassell case), within the operation of the articles of the Code of Practice permitting petitory actions. * * *'"

Later in the Amerada case the court said: "Thus it may be seen that after the decision in the Glassell case, declaring that under the law as it then existed the mineral lessee did not have a greater right than the ordinary lessee, both being controlled by the same basic law, and, consequently, without the right to institute a petitory or possessory action, the legislature, at its regular session of 1938, adopted Act 205, classifying a mineral lease and similar contracts as real rights and incorporeal immovable property in order to give to the mineral lessee 'any procedure available to the owner of immovable property or land' so

---

[4] Cf. Lucas v. Baucum, 5 Cir., 50 F. 2d 806.

[5] Rents from city real estate.

*that his rights 'may be asserted, protected and defended in the same manner as may be the ownership or possession of other immovable property by the holder of such rights. * * *'* (Italics ours.)"

It is evident that the issue in the Glassell case was one of procedure and has been so confined in subsequent litigation.

In Texas Co. v. Fontenot, supra, the court said: "The words 'bonus', 'rental', and 'royalty' used in connection with oil and gas leases are to be construed in the ordinary and popular sense, 'bonus' meaning the cash consideration paid or agreed to be paid for the execution of the lease, * * *."

As the execution by a fee owner of an oil and gas lease is a dismemberment of the property amounting to a partial alienation and bonus is the cash consideration paid therefor, it follows that the bonus paid the taxpayer for an oil and gas lease fell into his separate estate.

█ Our analysis and appraisal of Louisiana jurisprudence compel the conclusion in the instant case that neither royalties nor bonuses received by the taxpayer from oil and gas leases covering his separate real property fell into the marital community.

Lazard v. Commissioner, 5 Cir., 153 F.2d 348, is not opposed to the views herein expressed. While the Commissioner alternatively urged in that case in the Tax Court and in this Court that royalties from the wife's separate property while being administered by the husband would not fall into the community but would remain the wife's separate property, neither Court found it necessary to consider the alternate contention, as each found that the wife's property was not being administered by the husband.

Holding, as we do, that the royalties and bonuses from mineral leases on the taxpayer's separate property were his separate income, we find no need to consider the Commissioner's second and alternate argument.

The judgment appealed from is reversed, and the cause is remanded for further proceedings not inconsistent herewith.

Reversed and remanded.