JANVIER, Judge.
This is a suit for a declaratory judgment. It presents solely questions of law on the determination of which depends the ownership as between a usufructuary and a naked owner of certain bonuses, delay rentals and royalties which have resulted or may result from an oil, gas and mineral lease covering the land in question, which consists of 799.62 acres known as Belmont Plantation in the Parish of Pointe Coupee, Louisiana.
There is no dispute concerning the facts. After the death of Dr. Wiley R. Buffington on November 30, 1950, there was judgment in his succession proceedings under which his widow, Mrs. Rowena Morrison Buffing-ton, was recognized as surviving spouse in' community and, as such, sent into possession of an undivided half interest in the lands in question. She was also recognized as usufructuary of the other undivided half interest in the 'said lands.
The present plaintiff, Mrs. Jane Buffing-ton King, and other persons were recog *520 nized as the naked owners of that undivided half of which Mrs. Buffington was recognized as usufructuary. Mrs. King’s interest was one-twelfth of one-half of the entire property, or one-twenty-fourth of the whole and the other- heirs of Dr. Buf-fington were the owners of the other eleven-twenty-fourths of the entire property, also, of course, subject to the usufruct of Mrs. Buffington.
The judgment of possession was signed on June 11, 1951. On January 30, 1958, Mrs. Jane Buffington King executed a power of attorney in favor of Mrs. Buffington, under which she authorized Mrs. Buffing-ton to represent her in the execution of a mineral lease on the land in question and to collect, for her, such bonuses, delay rentals, or royalties as might he due her as a result of the execution of the lease or the subsequent operations of the lessee.
On February 13, 1958, Mrs. Buffington entered into a lease with Salt Dome Production Company, representing herself and Mrs. King, and this lease was executed by all the other heirs. It provided for the payment to the lessors of $15 an acre as a bonus for the execution of the lease, and $10 per year per acre as delay rental on such land covered by the lease as the lessee might select to hold for future drilling operations. The delay rental payment was to begin with the second year of the lease, and there was also provided a royalty of one-eighth of all gas, oil and other liquid hydro-carbons which might be produced, and $1 per long ton for sulphur. The bonus which was paid for the execution of the lease was $11,994.30, and it is conceded that if Mrs. King, as possessor of the naked ownership of an undivided one-twenty-fourth interest, is entitled to a share, this share would be $499.80.
On February 13, 1959, the lessee, as delay rental,, paid a sum of which Mrs. King’s share, if she is entitled to a share, would be $333. The amounts paid as a bonus and as delay rentals were paid to Mrs. Buffington who received in addition to her own portion such portion, if any, as might be due to Mrs. King. She received this under the power of attorney from Mrs. King which, as stated, authorized her not only to execute the lease, but also to receive such sums as might be due to Mrs. King.
Mrs. Buffington then, apparently in an effort to have it determined whether Mrs. King and the other heirs, as naked owners, were entitled to share in the royalties which might result, or in the bonuses or delay rental which had been paid or which might be paid in the future, refused to deliver to Mrs. King any portion of the bonus money or of the delay rental which she had received. This litigation is the result, Mrs. King not only praying for a judgment declaring her to be the owner of such bonus, delay rental or royalties, but maintaining that, as a result of the receipt by Mrs. Buf-fington of money under the power of attorney, estoppel now prevents Mrs. Buffington from contending that those moneys should not be paid to Mrs. King.
In the Civil District Court for the Parish of Orleans it was decided that the entire fund, whether resulting from bonuses, delay rentals or royalties, and whether received or to be received, should go to the usufructuary. Mrs. King has appealed.
It is conceded that, since the decision in the District Court, a producing well has been brought in on the property, so that there is actually presented the question of the distribution of the royalties which have or will result, as well as the distribution of the bonus money and the payment for delay rentals.
The question as to whom is- due such a bonus or such a delay rental or such royalties has for some time presented a most vexing problem and, apparently, when the decision was rendered in the District Court, the District Judge felt that the decision of the Supreme Court in Milling v. Collector of Revenue, 220 La. 773, 57 So.2d 679, 683, was determinative of the issues presented. There Milling had acquired cer *521 tain lands prior to his marriage. After his marriage, as a result of mineral leases on those lands, he received royalties, delay rentals and bonuses, and, in a controversy with the State Board of Tax Appeals took the position that these, as fruits of his separate property, fell into the community and that, accordingly, for State income tax purposes, he could treat those monies as belonging to the community. This would have resulted in a saving of $2,722.39 and interest in income tax payment. From an adverse decision by the Collector of Revenue, Milling took the matter to court and ultimately the Supreme Court held that those monies fell into the community and that, accordingly, the additional tax was not due.
In the case at bar it was contended in the District Court and, as already stated, held that that decision was controlling here and that, since the lease did not result in a depletion of the property itself, it should be treated as having produced “fruits” of the property and that, accordingly, the proceeds should be considered as belonging to the usufructuary since a usufructuary is entitled to the “fruits” as against the possessor of the naked ownership.
In that decision the possibility that it might effect a determination of the identical question. which is here presented was discussed by the Court. Note the following:
“ * * * in a supplemental brief the attorneys for the Collector suggest that to come to the conclusion we have here reached will lead to confusion when treating of usufruct, since the usufructuary occupies the same position with reference to the ‘products’ or ‘fruits’ of the property subject to the usufruct as the community occupies with reference to the ‘profits’ or ‘fruits’ of the separate property of the spouses, citing Succession of Andrus, 131 La. 940, 60 So. 623; and if the Court holds that the proceeds resulting from an oil or gas lease on the separate property of the husband (or the separate property of the wife administered by the husband alone or by them jointly) belong to the community, then the usu-fructuary will likewise have the right to retain as owner all the oil royalties and bonuses which he has received from the land during the existence of the usufruct, thus depleting the land of its value and leaving to the heirs (of the deceased husband or wife) only the naked ownership of the perhaps almost worthless soil.
“The supposed problems posed in the above argument are not before the Court here, and necessarily any expression of opinion on the subject would be at best obiter.”
The “supposed” problems which were referred to are the very problems which were presented here, and we would have considered them most difficult had it not been for the fact that the Supreme Court itself, since the decision in the Milling case, supra, in an opinion rendered in Gueno v. Medlenka, 238 La. 1018, 117 So.2d 817, 819, has settled the question as between the usufructuary and the owner in so far as the royalties in this case are concerned.
Counsel for Mrs. Buffington, the usufruc-tuary, concedes that the Medlenka case put at rest the question so far as the royalties are concerned, but argues that nothing in that case is determinative of the question of to whom delay rentals and bonus monies must go. There are several statements in the opinion of the Court in the Medlenka case which seem to us to require a holding that where, at the time of the granting of the lease, a usufruct is already in existence and there has not been production under the lease, the possessor of the naked ownership and not the usufructuary is entitled to bonus, delay rental and royalty. In that case the Supreme Court said that the initial thing to be determined is “whether the creation of k usufruct on land carries with it a right in the usufructuary to search for and reduce. to his possession the oil and *522 gas which may lie under the surface.” In discussing this question the Court said:
“ * * * oil and gas have no use unless their substance is altered and, therefore, it is apparent that the usu-fructuary of land cannot use any oil or gas which exists under the land, and by a parity of reasoning, he does not have the right to explore for these minerals and withdraw them from the land. The usufructuary of land, having only a perfect usufruct, has only the right to the natural fruits of the land and such civil fruits as are described and treated in Articles 544 through 554 of the Civil Code * * *.”
And, after having said that the usu-fructuary has no right to the minerals, the court continued:
“ * * * The usufructuary, not having any right to explore for minerals, is not a necessary party to a mineral lease and neither may he prevent the owner’s lessee from entering the property for exploration purposes nor may he object to such exploration as long as this right is exercised in such a way as to not unreasonably interfere with his use of the land.”
If the usufructuary is not a necessary party to such a lease, obviously the owner is the only party interested and the Court very clearly so held, saying:
“ * * * it would not be reasonable to conclude that the usufructuary’s consent was required in order for the owner to conduct mineral operations on the land as long as the operations do not to any substantial extent interfere with the usufructuary’s enjoyment of the property — for to so hold would vest in the usufructuary veto right not accorded by law and permit him to keep the mineral rights out of commerce during the entire life of the usufruct * *
We find language to the same effect in Gliptis v. Fifteen Oil Co., 204 La. 896, 16 So.2d 471, 474:
“ * * * while the owner of land is not the owner of the fugitive minerals therein, yet he has exclusive right to explore his land for the production of minerals and to extract therefrom, and reduce to possession and ownership, all such minerals as may be found in the earth beneath the surface of his land.”
If the usufructuary has himself no right to explore for such minerals, how can it be successfully argued that he has the right to lease to someone else that right which he himself does not have and to receive payment for the leasing of that right? The bonus paid, the delay rental and the royalty all result from the leasing of such a right, and it necessarily follows that, since the usufructuary does not have the right to himself explore, he cannot receive payment for leasing that right to someone else.
What the Supreme Court said in the Medlenka case, and what we have said here is based entirely on the fact that, at the time of the commencement of the usufruct, there was neither lease nor production of minerals.
It is unnecessary that we discuss the question of whether, by receiving money under the power of attorney, Mrs. Buffing-ton was estopped to contend that the money did not belong to Mrs. King.
Accordingly, the judgment appealed from is annulled, avoided and reversed, and there is now judgment recognizing Mrs. Jane Buffington King as the owner of such amounts as may have been paid or as may hereafter become due to her as the owner of an undivided one-twenty-fourth interest in the property consisting of 799.62 acres and known as Belmont Plantation; all at the cost of defendant.
Reversed.