219 So.2d 817 (1969)
Succession of Thomas Earl BARR, a. k. a. T. E. Barr, Deceased.
No. 11161.
Court of Appeal of Louisiana, Second Circuit.
February 5, 1969.
Rehearing Denied March 3, 1969.
*818 Peters, Ward, Johnson & Phillips, Shreveport, for plaintiff-appellant.
Johnston, Johnston & Thornton, Brown & Dormer, Shreveport, for defendant-appellee.
Before AYRES, BOLIN, and PRICE, JJ.
AYRES, Judge.
The present action, a contest between the former wife of the decedent, Thomas Earl Barr, who was instituted as universal legatee and made executrix of his estate, and the surviving widow of the decedent, concerns the status of certain property, real and personal, acquired by the surviving spouse in her name during the existence of her marriage to the decedent. For convenience in identification of the parties, they will be referred to in the order mentioned respectively as plaintiff and defendant.
Inasmuch as this cause was heretofore before this court but remanded for completion of the record (203 So.2d 769), the facts other than those which appear necessary for an understanding of the issues currently before us, as they are resolved, will not be restated.
Upon the death of Thomas Earl Barr, defendant caused his succession to be opened *819 as an intestate succession. An inventory was taken wherein his community interest in the community of acquets and gains which existed between him and defendant was appraised at the sum of $5,899.08. Decedent's last will and testament was subsequently discovered. It was duly presented and probated. In accordance with the terms of the will, plaintiff was confirmed as testamentary executrix of the estate in which she was, as stated, instituted as universal legatee. Thereafter a rule by plaintiff directed to defendant required defendant to account for all assets of the succession under her control or in her possession and to show cause why the inventory should not be reformed to include additional property not listed therein, the status of which now constitutes the subject matter of this controversy since no issue remains as to the accounting features of the action.
The property in contest consists of the following:
(1) The north 120 feet of the west 114 feet of Lot 179 and the north 120 feet of the east 64 feet of Lot 180, South Heights Subdivision; Lots 4, 5, 6, 22, 23, and 24 (less the west 95 feet thereof) of Guerry Park Subdivision, and Lot 67, Western Hills Subdivision, Unit No. 1;
(2) Two shares of the capital stock of the Leesville Improvement Corporation;
(3) Twenty-five hundred dollars received by defendant through checks drawn by decedent the day prior to his death;
(4) Cash on deposit in the sum of $390.05 in the First National Bank in the name of defendant;
(5) The cash surrender value of an insurance policy, or policies, taken out by defendant on her own life.
The court concluded from the record, consisting primarily of deeds and records evidencing defendant's purchases of realty and the testimony of defendant and of her certified public accountant, defendant had established that all the property was her separate and paraphernal property. Accordingly, there was judgment not only rejecting plaintiff's demands but affirmatively decreeing that the property constituted the separate and paraphernal estate of the defendant. From that judgment plaintiff appealed.
Appellant complains, in a specification of errors, that the court erred (1) in not applying the presumption that all property acquired during marriage constitutes community assets; (2) in finding that the business conducted by defendant during her marriage was for the benefit of her separate estate; (3) in failing to find that the increase in defendant's net worth during her marriage was community property; (4) in not requiring defendant to account for the $2,500.00 received from decedent's checks drawn on his or the community bank account; (5) in not amending the inventory to reflect that the items claimed by defendant as her separate property were in fact community assets; and (6), in the alternative, in not holding defendant indebted to the community estate for the increase in the value of her separate estate.
Defendant and Thomas Earl Barr were married November 30, 1944. He died August 5, 1965, survived by a former wife, plaintiff herein, and defendant as his widow.
At the time of the marriage of Barr and defendant, defendant owned and operated a restaurant and a boarding house. Both businesses were sold, whereupon, through the use of the funds realized from the sale of these businesses, defendant engaged in an enterprise of buying, developing, and selling real estate. She purchased property in her own name and developed subdivisions in and adjacent to Shreveport. The realty described above, except the parcel upon which she maintained her home, was unimproved and constituted the realty remaining in her name at the time of her husband's death. None of this property, including the home, was enhanced in value during the marriage through the efforts, labor, or industry of either husband or wife.
*820 It appears appropriate to point out at this time that all the deeds of defendant's acquisitions of the aforesaid property and of all other property which was acquired and disposed of in the operation of her activities, except one wherein the property purchased was subsequently sold at a loss, recited that all of these purchases were with defendant's separate and paraphernal funds, under her separate administration and control, and that the acquisitions were for the use and benefit of her separate and paraphernal estate. In addition, these deeds recited, above the signatures of Thomas Earl Barr, that he appeared and acknowledged that defendant, his wife, acquired the property described in each of them "with her separate and paraphernal funds, for the use and benefit of her separate and paraphernal estate, under her separate administration and control."
The rule, long and firmly established in the jurisprudence of this State, is that a husband who has been a party to an act of purchase of realty, by and in the name of his wife, in which it is declared that the consideration paid belonged to the wife in her paraphernality and the property is to be and remain her separate and paraphernal property, either by signing the deed or as a witness thereto, is precluded from thereafter contradicting it under the doctrine of estoppel by deed as a matter of public policy in order that there may be some security of titles. Monk v. Monk, 243 La. 429, 144 So.2d 384 (1962); Rousseau v. Rousseau, 209 La. 428, 24 So.2d 676 (1946); Pfister v. Casso, 161 La. 940, 109 So. 770 (1926); Tonglet v. Chopin, 155 La. 752, 99 So. 587 (1924); Fireman's Ins. Co. v. Hava, 140 La. 638, 73 So. 708 (1916); Karcher v. Karcher, 138 La. 288, 70 So. 228 (1915); Maguire v. Maguire, 40 La.Ann. 579, 4 So. 492 (1888); Kerwin v. Hibernia Ins. Co., 35 La.Ann. 33 (1883).
Particularly appropriate to the situation here is the language employed in Kerwin v. Hibernia Ins. Co., supra, wherein it is stated:
"It may now be considered as settled, that where a husband has been a party to an act of purchase of property in the name of his wife, reciting that the purchase has been made with her paraphernal funds, and establishing and constituting it as her pararphernal property, he will not be permitted, in his own interest, to contradict his own solemn assertions, and attack the title of his wife, established with his own consent and by his own act; and so his legatees or simple heirs, claiming through him, standing in his shoes, and bound, like himself, by his acts and words, are equally debarred. Drumm vs. Kleinman, 31 [La.] An[n.] 124; Heirs of Compton vs. Maxwell, 33 [La.] An[n. 685] 688; Brown vs. Stroud, 34 [La.] An[n.] 374; Armorer vs. Case, 9 [La.] An[n.] 242; Stewart vs. Mix, 30 [La.] An[n.] 1036.
"Only creditors and forced heirs are excepted from this rule, and the latter only to the extent of their legitime and for the purpose of protecting the same. Outside of the legitime, they stand upon precisely the same footing with collateral heirs or universal legatees, having no rights against the decedent, but only rights derived from him and which he himself, if living, might assert." (Emphasis supplied.) 35 La.Ann. 33, 35.
From the recitals in the deeds as to the paraphernality of the property, the conclusion is inescapable, under the legal principles to which we have just referred, that the immovables constitute the separate and paraphernal property of defendant.
Moreover, inasmuch as none of this property was increased or enhanced in value during the marriage through the efforts, labor, or industry of either or both husband and wife, no community advantage or interest arose after its purchase. LSA-C.C. Art. 2408.
However, notwithstanding the provisions of LSA-C.C. Arts. 2402 and 2405, and the pronouncements in the jurisprudence *821 of this State, particularly in Houghton v. Hall, 177 La. 237, 148 So. 37 (1933), it may be observed the trial court held, and we agree, that the proof offered by defendant overcame the presumption of law as to the community status of the property and established its paraphernal character.
The shares of the capital stock of the Leesville Improvement Corporation were acquired by defendant in 1941 and therefore prior to her marriage to decedent. The furniture in the home was also acquired by her prior to her marriage.
There is no evidence in the record to indicate that the cash surrender value of insurance policies should be included as community property. The policies were acquired by defendant before her marriage and the premiums were not shown to have been paid from community funds. Defendant maintained a separate bank account from that of the community. There was no commingling of funds.
The $2,500.00 received through checks drawn by decedent on the day prior to his death was to restore to defendant separate funds of hers which he had misappropriated.
Plaintiff finally contends there was error in the conclusion that the increase in defendant's net worth during her marriage to decedent did not constitute an asset of the community for which she should account. In this regard plaintiff points out that defendant's net worth at the time of her marriage was $10,000.00 (defendant claims it exceeded $40,000.00), whereas at the dissolution of her marriage she had a worth of $122,147.05 less an indebtedness of $11,964.64. Thus, it is apparently contended that defendant's separate estate had a net increase in value of $100,182.41, for which defendant, in settlement of the succession, should be required to account.
Plaintiff's contentions are based upon LSA-C.C. Art. 2386 which provides that, in the absence of the execution and recordation of an authentic act wherein a wife reserves the fruits of her separate property for her own separate use and benefit and declares her intention to administer her property separately and alone,
"The fruits of the paraphernal property of the wife, wherever the property be located and however administered, whether natural, civil, including interest, dividends and rents, or from the result of labor, fall in the conjugal partnership, if there exists a community of acquets and gains; * * *."
Conceded is the fact that no such authentic act was executed or recorded.
A claim is made that the profits realized by defendant from the sale of her separate property should be denominated "fruits" and therefore fall within the community. There is no substantial authority for thus defining "fruits." LSA-C.C. Art. 499 states:
"Fruits of the earth, whether spontaneous or cultivated; civil fruits, that is the revenues yielded by property from the operation of the law or by agreement; and the young of animals belong to the owner by right of accession."
LSA-C.C. Art. 544 states:
"All kinds of fruits, natural, cultivated or civil, produced, during the existence of the usufruct, by the things subject to it, belong to the usufructuary."The usufructuary referred to in this article may be likened to a husband as head and master of a community managing the separate estate of his wife. Commissioner of Internal Revenue v. Gray, 159 F.2d 834 (5 Cir. 1947).
LSA-C.C. Art. 545 states:
"Natural fruits are such as are the spontaneous product of the earth; the product and increase of cattle are likewise natural fruits.

*822 "The fruits, which result from industry bestowed on a piece of ground, are those which are obtained by cultivation.
"Civil fruits are rents of real property, the interest of money, and annuities.
"All other kinds of revenue or income derived from property by the operation of the law or private agreement, are civil fruits."
The article of the Civil Code making reference to profits of the effects of which the husband has the administration and enjoyment is LSA-C.C. 2402.
As was pointed out by Judge Elmo P. Lee of the Fifth Circuit, Court of Appeals, a distinguished Louisiana jurist, in United States v. Harang, 165 F.2d 106 (1947cert. den.), 334 U.S. 811, 68 S.Ct. 1017, 92 L.Ed. 1743, where the Louisiana Civil Code of 1825 was drafted in French, translated into English and printed in both languages, the French text was controlling in case of conflict, so the provisions of the Civil Code enumerating property forming the community should have used the word "fruits" instead of the word "profits," since the word "profits" was merely an erroneous translation of the word "fruits" in the original French text. Thus, what is meant is that, under certain circumstances, "fruits" of, and not "profits" from, the sale of a separate estate fall into the community.
These pertinent observations were also made by Judge Lee in Commissioner of Internal Revenue v. Gray, supra, 159 F.2d 834, 838-839:
"The rights of the community in the income from the separately owned properties of the spouses under the administration of the husband are the same as the rights of the usufructuary to income. The community is entitled to the fruits to which the usufructuary is entitled. In Succession of Andrus, 131 La. 940, 60 So. 623, 625, the court said: `The profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, fall into the community. C.C. art. 2402. Hence the community quoad such effects, whether owned by the husband or the wife, occupies a position similar to that of an usufructurary. This is the jurisprudence of this court, and the rule of stare decisis forbids the reopening of the same question.' See to the same effect Wimbish v. Gray, 10 Rob. 46; Succession of Waterer, 25 La.Ann. 210; and Long v. Kee, 42 La.Ann. 899, 8 So. 610. Therefore, we turn to the articles of the Code setting forth the `fruits' to which the usufructuary is entitled to determine the `fruits' (erroneously translated as `profits' in article 2402) to which the community is entitled. These articles are set forth in a footnote.
"`Fruits' are products reproduced from time to time in successive seasons and include fruits of the earth, civil fruits, and the young of animals. Elder v. Ellerbe, 135 La. 990, 66 So. 337; Jackson v. Shaw, 151 La. 795, 92 So. 339. `Fruits' do not include minerals and timber. C.C. art. 551. Elder v. Ellerbe, supra; Harang v. Bowie Lumber Co., 145 La. 96, 81 So. 769.
"As defined in article 533 of the Civil Code, a usufruct is the right of enjoying a thing, the property of which is vested in another, and to draw from the same all of the profits, utility, and advantages which it may produce, provided it be without altering the substance of the thing. The kind of fruits spoken of in article 545 of the Civil Code of which the usufructuary has the enjoyment are such as may be used without altering the substance of the thing."
As heretofore observed, there was no income from any of this property such as rent or other "fruits." There is no advantage to the community estate if "the increase [to the separate property] is due only to the ordinary course of things, to the rise in the value of property, or to *823 the chances of trade." LSA-C.C. Art. 2408.
Thus, there are two answers to plaintiff's contention. The first is that the profits realized from the sale of her separate property constitute assets of her separate and paraphernal estatethose profits are not comprised in the word "fruits"and, second, proceeds of the sale of a wife's separate paraphernal realty, whether administered by the husband or not, constitute her separate and paraphernal property and cannot fall into the community of acquets and gains. Guss v. Mathews, 179 La. 1033, 155 So. 765 (1934).
In Peters v. Klein, 161 La. 664, 109 So. 349, 350 (1926), it is stated:
"The purchase price of all separate property owned by defendant prior to his marriage, and sold during the existence of the community, does not belong to the community."
Thus, the conclusion is inescapable that the "fruits," the produce of defendant's separate and paraphernal estate, that would fall into her community estate under some circumstances, do not encompass the proceeds of the sale of that property. It appears pertinent to point out that upon the immovables, which constitute the great bulk of her property, remaining in defendant's separate estate, there has been placed a valuation of $107,800.00 an amount in excess of her net worth at the time of the dissolution of the community by the death of her husband.
For the reasons assigned, the judgment appealed should be affirmed. We deem it appropriate, however, to point out that, inasmuch as the judgment appealed adequately describes and correctly disposes of the immovables involved, its approval and affirmance by the decree of this court, without a repetition of the description of the property, constitute compliance with LSA-C.C.P. Arts. 1919 and 2089, and that the recordation of the judgment and our decree of affirmance, so far as the description of the property is concerned, satisfy the law of registry.
Accordingly, the judgment appealed is affirmed at plaintiff-appellant's costs.
Affirmed.